United States Court of Appeals,

Eleventh Circuit.

No. 95-4243

Non-Argument Calendar.

UNITED STATES of America, Plaintiff-Appellee,

v.

Jorge Eliecer BUENO-SIERRA; Carlos Enrique Sanchez; Wilmer
Marin-Garcia, Defendants-Appellants.

Nov. 12, 1996.

Appeals from the United States District Court for the Southern
District of Florida. (No. 93-567-CR-DTKH), Daniel T.K. Hurley,
Judge.

Before HATCHETT, Chief Judge, TJOFLAT and KRAVITCH, Circuit Judges.

PER CURIAM:

Jorge Bueno-Sierra, Carlos Sanchez, and Wilmer Marin-Garcia
raise a host of challenges to their convictions on numerous
drug-related offenses.[1] We AFFIRM.

## I. FACTS

In September, 1993, the U.S. Customs Service targeted Bueno-
Sierra as a potential drug figure. Reliader Heredia, a government
informant cooperating with officials as part of a plea bargain in
another case, met Bueno-Sierra and, from his demeanor, surmised
that he was in the drug trade.

At the direction of the Customs Service, Heredia arranged a

---

[1] The government charged appellants with four counts:
conspiracy to import cocaine, 21 U.S.C. § 963; conspiracy to
possess cocaine with the intent to distribute, 21 U.S.C. § 846;
importation of cocaine, 21 U.S.C. §§ 952(a), 960(a)(1), (b); and
possession of cocaine with intent to distribute, 21 U.S.C. §
841(a)(1). A jury found Bueno-Sierra and Sanchez guilty on all
counts, and found Marin-Garcia on all counts except the
possession charge.

"formal introduction" with Bueno-Sierra.  Heredia suggested that he was a drug dealer interested in bringing cocaine to the United States and Bueno-Sierra sought Heredia's help in smuggling Bueno-Sierra's cocaine from Columbia.  Heredia also met Marin-Garcia, who was to arrange the Columbian end of the deal.  Marin-Garcia would tell Heredia where to locate the drug shipment.  Heredia would then offload the drugs, supposedly with the help of Heredia's contacts among the authorities at the Port of Miami.

The conspirators held several subsequent meetings, ordinarily attended by Heredia, Sanchez, and Bueno-Sierra and his wife, Marta Rojas.[2]  Heredia wore a transmitter to record many of these meetings.  Bueno-Sierra and Marin-Garcia informed the conspirators that the drugs would be transported aboard the vessel Lontue and described precisely the location and appearance of both the container and the boxes within the container.

On November 20, Customs opened the identified container from the Lontue and recovered sixteen boxes of cocaine.  Four days later, Bueno-Sierra and Sanchez waited for word from Heredia while Heredia took possession of the drugs from Customs.  Sanchez and Bueno-Sierra, together with Hernan Diego Garcia,[3] then met Heredia and took the drugs to Higinio Cueli's house [4] and unloaded and repackaged the cocaine.  Sanchez and Bueno-Sierra were arrested as

[2]Rojas was charged along with appellants, but remains at large.

[3]Garcia pled guilty in this case.  He is not a party to the instant appeal.

[4]Bueno-Sierra promised to pay Cueli as much as $10,000 for the use of his home for an hour.  Cueli later pled guilty in this case and testified against his compatriots.

they left and Marin-Garcia was arrested subsequently. Customs seized the drugs at Cueli's home.

## II. ISSUES ON APPEAL

Appellants allege the following: (1) that the trial court erred in a number of evidentiary rulings; (2) that the trial court improperly overruled defense objections to the composition of the jury; (3) that Bueno-Sierra was denied effective assistance of counsel; (4) that the government's delayed disclosure of certain evidence and failure to correct certain erroneous testimony prejudiced the defense; (5) that the prosecutor made improper comments during closing argument justifying reversal; and (6) that appellants' role in the crimes do not justify the sentences imposed.[5]

### A. Admissibility of Berth Request Form

As evidence that appellants actually imported cocaine into the United States from a place outside the country, *see* 21 U.S.C. § 952(a), the government introduced the Lontue's berth request form, a document that assigns incoming vessels dock space and notes arrivals and departures of particular ships. The form was prepared by the Lontue's shipping company, yet it was introduced through John Perez, the Assistant Chief of Port Operations for Miami, whose office maintains such forms on file.

At trial, the defense objected to the use of the berth request as hearsay outside the scope of the business records exception.

---

[5]We hold that appellants' evidentiary claims other than those discussed in section III.A., *infra,* lack merit. Similarly, we find appellants' jury selection, assistance of counsel, and prosecutorial misconduct claims meritless and need no further discussion. *See* 11th Cir.R. 36-1.

*See* Fed.R.Evid. 803(6).[6]   Appellants press this issue here, alleging that because the shipping companies produced the form and the Port of Miami only kept it on file without any independent verification of its truth, the business records exception to the hearsay rule is inapposite.   They contend that because the custodian of the records had no knowledge of who prepared them, the requirements of Rule 803(6) are not satisfied.[7]   We disagree.

The touchstone of admissibility under the business records exception to the hearsay rule is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence. *United States v. Veytia-Bravo,* 603 F.2d 1187, 1189 (5th Cir.1979), *cert. denied,* 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980).[8] This court has held that the proponent of a document ordinarily

---

[6]The trial court admitted the document pursuant to this court's decision in *Baxter Healthcare Corp. v. Healthdyne, Inc.,* 944 F.2d 1573 (11th Cir.1991).  In that case, we held that records of the kind at issue in the instant case were admissible under Rule 803(6), but we later vacated the opinion when the parties withdrew their appeal.  *Baxter Healthcare Corp. v. Healthdyne, Inc.,* 956 F.2d 226 (11th Cir.1992).

[7]Rule 803(6) provides an exception for:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the custodian or other qualified witness, unless the source of information or circumstances of preparation indicate lack of trustworthiness.  Fed.R.Evid. 803(6).

[8]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

need not be the entity whose first-hand knowledge was the basis of the facts sought to be proved. *United States v. Atchley,* 699 F.2d 1055, 1059 (11th Cir.1983).[9] To satisfy Rule 803(6), however, the proponent must establish that it was the business practice of the recording entity to obtain such information from persons with personal knowledge and the business practice of the proponent to maintain the records produced by the recording entity.[10] *See Munoz v. Strahm Farms, Inc.,* 69 F.3d 501, 503 (Fed.Cir.1995); *Saks Int'l, Inc. v. M/V "Export Champion",* 817 F.2d 1011, 1013 (2d Cir.1987).

Here, the government offered testimony sufficient to satisfy the requirements for admissibility. Perez testified that berth requests are maintained regularly in the Port's operations office, and that ships' agents regularly submit such documents as a prerequisite to obtaining a docking location. Perez further stated that the ships' agents personally prepare the berth requests. Applying the rule set out above, we conclude that the berth request was properly admitted at trial.[11]

---

[9]In *Atchley,* we held that telephone records made and preserved in the regular course of business were properly admitted without personal knowledge of the identity of the preparer.

[10]We note that Rule 803(6) does not eliminate double hearsay problems. Rather, it commands that each link in the chain of possession must satisfy the requirements of the business records exception or some other exception to the hearsay rule. *See* 4 *Weinstein's Evidence,* 803(6)[04], at 803-210 to 803-212 (Jack B. Weinstein et al. eds., 1996).

[11]The Second Circuit has ruled the same way on parallel facts. *Saks Int'l Inc. v. M/V "Export Champion",* 817 F.2d 1011, 1013 (2d Cir.1987) (where ship was loaded in Africa, persons loading ship prepared a loading report, and report was maintained by the ship's mate in the regular course of business, Rule 803(6)

*B. Government Disclosures*

Appellants next allege that the government's delayed disclosure of certain materials and failure to correct certain trial testimony necessitates reversal. Although we do not condone the prosecutor's actions, the trial court's actions in the instant case cured any alleged violation of the prosecutor's disclosure duties.

1. Delayed Disclosure

The most significant of appellants' claims stems from the fact that significant impeachment testimony against government witness Heredia was not disclosed until trial had begun, and that the berth request form was not disclosed until it was sought to be introduced.[12] On the seventh day of trial, the prosecution turned over to the defense a number of documents which contained information seriously inconsistent with Heredia's trial testimony. Appellants allege that this overdue disclosure was improper, in light of the prosecutor's disclosure duties under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

*Brady* requires the government to produce for the defense impeachment evidence against government witnesses. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d

---

permitted the report to be introduced through the ship's mate).

[12]Appellants also claim that tapes and transcripts should have been turned over earlier and that impeachment evidence against witness Cueli was withheld. We find that, absent evidence of prejudice to appellants, the fact that the tapes and transcripts were available a week before trial does not warrant reversal. Further, the government did turn over the information sought regarding Cueli far in advance of trial.

481 (1985). Delayed disclosure may be grounds for reversal, "but only if the defendant can show prejudice, *e.g.,* the material came so late that it could not be effectively used." *United States v. Beale,* 921 F.2d 1412, 1426 (11th Cir.), *cert. denied,* 502 U.S. 829, 112 S.Ct. 100, 116 L.Ed.2d 71 (1991). In this case, however, such prejudice was averted because the trial court recessed for the remainder of the day and allowed additional cross-examination of Heredia the next morning. Appellants' attorneys fully explored the extent of Heredia's prior inconsistent testimony at that time. We hold that, as a result of the trial court's remedial measures, appellants were not prejudiced by the late disclosure.

Second, appellants claim that the late disclosure of the berth request was a violation of both Federal Rule of Criminal Procedure 16 and the court's standing discovery order. Assuming a violation,[13] we hold that no reversible error occurred because appellants have shown no prejudice from the delay.

Late disclosure of evidence required to be turned over under Rule 16 or a standing discovery order necessitates reversal only if it violates a defendant's substantial rights. *United States v. Camargo-Vergara,* 57 F.3d 993, 998 (11th Cir.1995). Substantial prejudice results if a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense. *Id.* Here, the defendants suffered no such prejudice because there was significant

---

[13]The standing discovery order and the Rules contain substantially similar language, requiring the prosecution to turn over "documents ... which are within the possession, custody or control of the government, and which are ... intended for use by the government as evidence in chief at the trial...." Fed.R.Crim.P. 16(a)(1)(C).

other evidence introduced at trial substantiating the government's contention that appellants imported cocaine from Columbia to the Port of Miami aboard the ship Lontue. Accordingly, their ability to defend against the importation charge was not compromised by the admission of the berth request. *See United States v. Accetturo,* 966 F.2d 631, 636 (11th Cir.1992), *cert. denied,* 506 U.S. 1082, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993).

2. Failure to Correct Testimony

Appellants claim that Heredia made several false statements in the course of his testimony that the government failed to correct. They correctly cite *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), for the proposition that the prosecutor must correct known falsehoods. Although the record is unclear regarding whether the government indeed violated *Napue,*[14] we hold that reversal is inappropriate on these facts. Reversible error occurs only if a failure to correct results in material prejudice such that there is any reasonable likelihood that the false testimony would affect the jury's judgment. *United States v. Alzate,* 47 F.3d 1103, 1110 (11th Cir.1995). Defense counsel fully explored every inconsistency alleged by the appellants when the trial judge re-opened cross-examination. We hold, therefore, that the jury's judgment would not have been affected.

*C. Sentencing Adjustments for Role in Offense*

Each appellant challenges his Sentencing Guidelines range, on

---

[14]A government witness testified that Heredia told him that he made over $4 million in the drug trade, but Heredia testified to $2 million. The record does not demonstrate conclusively whether the prosecutor was aware of this or any other inconsistencies.

the ground that he had a lesser role in the conspiracy than found by the court. We review a trial court's factual determinations relative to sentencing for clear error. *United States v. Asseff,* 917 F.2d 502, 507 (11th Cir.1990).

Bueno-Sierra received a four-level enhancement in his sentence range as an organizer or leader of the conspiracy. *See* United States Sentencing Commission, *Guidelines Manual,* § 3B1.1(a) (Nov. 1995) [hereinafter *Guidelines* ]. Based on a review of the record and noting Bueno-Sierra's extensive role in coordinating every aspect of this transaction, we hold that the trial court's decision was not clearly erroneous.

Sanchez argues that he is entitled to a reduction for being a minor or minimal participant, but his conduct belies this claim. He participated in most of the meetings regarding the scheme and transported and unloaded the cocaine once it arrived in the United States. We therefore conclude that the sentencing determination has ample support in the record and is not clearly erroneous.

Finally, Marin-Garcia claims error in his enhancement for being an organizer, manager, or supervisor. *See Guidelines* § 3B1.1(c). The record evidence demonstrates, however, that Marin-Garcia coordinated the entire Columbian end of this conspiracy, informed the parties of the location of the cocaine aboard the ship, and provided replacement container seals to divert authorities' suspicion, among other things. Thus, the trial court did not clearly err in Marin-Garcia's sentence.

### III. CONCLUSION

For the foregoing reasons, appellants' convictions and

sentences are AFFIRMED.