The appellant, Michael Deangela Dowdell, was convicted of the fraudulent use of a credit card or debit card, a violation of §13A-9-14, Ala. Code 1975. He was sentenced as a habitual felony offender to eight years' imprisonment.
 I.
The appellant contends that the trial court erred in admitting into evidence a bank record, because, he says, the supervisor who printed the computer-generated record did not testify. Specifically, he argues that the record showing the victim's debit-card-transaction history was hearsay and that it did not fall within the business records exception of Rule 803(6), Ala.R.Evid.
Rule 803(6) provides that the following are not excluded by the hearsay rule:
 "A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation *Page 361 
indicate lack of trustworthiness. The term `business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."
In James v. State, 723 So.2d 776 (Ala.Crim.App. 1998), this Court stated:
 "The underlying rationale behind this [Rule 803(6)] exception is that business records have the `earmark of reliability' or `probability of trustworthiness,' because they reflect the day-to-day operations of the enterprise and are relied upon in the conduct of business. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed.2d 645 (1943)."
723 So.2d at 779.
"There is no requirement that the authenticating witness be the custodian, entrant, or maker of the record." Advisory Committee's Notes to Rule 803(6), Ala.R.Evid. "[T]he rule represents [a] continuing effort to relax `the requirement of producing as witnesses, or accounting for the nonproduction of, all participants in the process of gathering, transmitting, and recording information which the common law had evolved as a burdensome and crippling aspect of using records of this type.'" Advisory Committee's Notes to Rule 803(6), Ala.R.Evid., quoting Fed.R.Evid. 803(6) Advisory Committee's Note.
In United States v. Bueno-Sierra, 99 F.3d 375 (11th Cir. 1996), the United States Eleventh Circuit Court of Appeals addressed the admissibility of a business record where the official custodian of the records did not testify; that court stated:
 "The touchstone of admissibility under the business records exception to the hearsay rule is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence. United States v. Veytia-Bravo, 603 F.2d 1187, 1189 (5th Cir. 1979), cert. denied, 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980). This court has held that the proponent of a document ordinarily need not be the entity whose first-hand knowledge was the basis of the facts sought to be proved. United States v. Atchley, 699 F.2d 1055, 1059 (11th Cir. 1983). To satisfy Rule 803(6), however, the proponent must establish that it was the business practice of the recording entity to obtain such information from persons with personal knowledge and the business practice of the proponent to maintain the records produced by the recording entity. See Munoz v. Strahm Farms, Inc., 69 F.3d 501, 503
(Fed. Cir. 1995); Saks Int'l, Inc._v. M/V "Export Champion", 817 F.2d 1011, 1013 (2d Cir. 1987)."
99 F.3d at 378-79 (footnotes omitted).
In this case, Leslie King, an electronic services assistant at Auburn Bank, testified that she was responsible for maintaining a record of automatic-teller-machine transactions and for maintaining the camera in each automatic-teller machine. King stated that the bank's transaction history for the victim, Carol Farrow, is a regular business record maintained in the course of the bank's everyday business.
During voir dire examination, King further stated that, even though her supervisor, and not she, had printed Farrow's transaction history, she saw the transaction history record a day after it was printed. King indicated that the transaction history remained in the file in her supervisor's office, and that any Auburn Bank debit-card transaction made at an automatic-teller machine was kept in the computer records of Auburn Bank. According to King, her supervisor was no longer an employee of the bank.
During direct examination, King testified that she had personal knowledge of *Page 362 
the record of Farrow's transaction history. King stated that she removed photographs from the automatic-teller-machine cameras operated by Auburn Bank, and that the time the photographs were taken was indicated in the corner of each photograph. King stated that the times indicated on the photographs obtained from the Auburn Bank cameras matched several of the times indicated on Farrow's transaction-history record.[1]
Our review of the record indicates that the State offered testimony sufficient to satisfy the requirements for admissibility. King testified that the transaction-history records remained in the file in her supervisor's office, and that a record of any transaction made with an Auburn Bank debit card was kept in the computer records of Auburn Bank. Furthermore, King stated that she had personal knowledge of Farrow's transaction history, and that her supervisor had printed the information from a bank computer. Thus, the testimony adequately established that King, as part of her duties as an electronic services assistant, had personal knowledge of Farrow's transaction history records, and that it was the practice of Auburn Bank to maintain these records. United Statesv. Bueno-Sierra, supra. Based on the foregoing, we conclude that the record of Farrow's transaction history was properly admitted at trial.
 II.
The appellant maintains that the State failed to establish a prima facie case of the fraudulent use of a debit card.
We must accept as true evidence introduced by the prosecution, make all legitimate inferences from that evidence, and consider that evidence in the light most favorable to the prosecution. McKinney v. State,654 So.2d 95, 99 (Ala.Crim.App. 1995); Johnson v. State, 623 So.2d 444,447 (Ala.Crim.App. 1993). It is not the province of this Court to reweigh the evidence. Council v. State, 682 So.2d 495, 497
(Ala.Crim.App.), cert. denied, 682 So.2d 500 (Ala. 1996). "Conflicting evidence presents a jury issue." Curry v. State, 601 So.2d 157, 159
(Ala.Crim.App. 1992), citing Smith v. State, 583 So.2d 990
(Ala.Crim.App.), cert. denied, 583 So.2d 993 (Ala. 1991). This Court will not substitute its judgment for that of the jury as to the sufficiency of the evidence to sustain a conviction. Brandon v. State,542 So.2d 1316, 1319 (Ala.Crim.App. 1989).
Section 13A-9-14, Ala. Code 1975, states, in pertinent part:
 "(b) A person commits the crime of fraudulent use of a credit card or debit card if he uses, attempts to use or allows to be used, a credit card or debit card for the purpose of obtaining property, services or anything else of value with knowledge that:
". . . .
 "(3) For any other reason his use of the card is unauthorized by either the issuer or the person to whom the credit card or debit card is issued."
The State's evidence established the following. Carol Farrow, the victim, testified that the appellant was her son-in-law. Farrow stated that, on or around April 20, 1999, while she was visiting her daughter and the appellant, she asked the appellant to fix her car. She then handed him her car keys. According to Farrow, a small wallet containing her debit card was attached to her key ring. Farrow testified *Page 363 
that the appellant went outside and repaired her car, and that he then returned the keys and wallet to her. Farrow stated that, on April 22 while attempting to pay for gasoline at a service station, she noticed that her debit card was missing.
Farrow testified that, shortly after realizing she had lost her debit card, she contacted the bank. Farrow stated that she reviewed her automatic-teller-machine transaction history record and noticed that several large cash withdrawals were made from her checking account on April 22 and April 23, 1999. Farrow further stated that she reviewed the security photographs taken by the automatic-teller-machine cameras at the time that two of the withdrawals occurred. Farrow indicated that the appellant was the person depicted in the photographs who was using her debit card to remove cash from her account.
According to Farrow, the last time she had personally used her debit card was on April 20 at a local department store where she purchased an item for $20.96. Farrow testified that she usually did not make large cash withdrawals from her account with her debit card. Farrow indicated that she did not give the appellant permission to use her debit card to withdraw large sums of cash from her checking account.[2] Farrow stated that she did not tell the appellant her personal identification code, but that he may have overheard her tell her daughter what it was or he may have seen her type it into an automatic-teller machine.
When viewing the evidence in the light most favorable to the State, we conclude that the State established a prima facie case of fraudulent use of a debit card. Given that Farrow identified the appellant as the person who withdrew large amounts of cash from an automatic-teller machine by using her debit card, and that Farrow indicated that she did not authorize the appellant to use her debit card, the evidence sufficiently established that the appellant used Farrow's debit card to obtain money with the knowledge that he was not authorized to do so.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
Long, P.J., and McMillan and Cobb, JJ., concur; Baschab, J., concurs in the result.
[1] At trial, Farrow identified Dowdell as the person depicted in the automatic-teller-machine photographs.
[2] Farrow testified that, several weeks before the transactions in this case occurred, she permitted the appellant to use her debit card to purchase some items at a grocery store. Farrow stated that the appellant did not need her personal identification code number to use her debit card at the grocery store. The record indicates that Farrow's Auburn Bank card could be used as a credit card or as a debit card. *Page 364