[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15883
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cr-00316-SLB-TMP-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY DEE MCANALLEY,
a.k.a. Tony McAnalley,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(August 27, 2013)

Before WILSON, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Anthony Dee McAnalley appeals his conviction by a jury for solicitation to commit arson under 18 U.S.C. § 373.  McAnalley argues that the district court abused its discretion in not admitting certain evidence, in rejecting several of McAnnalley's requested jury charges, and in responding to a jury question.  McAnnalley also argues that the cumulative effect of prosecutorial misconduct denied him a fair trial.

I.

This case arose out of an arson that took place at the Sidelines Sports Bar and Deli (Sidelines) in Muscle Shoals, Alabama, in December 2010.  McAnalley's employee, Donald Duncan, was the prosecution's chief witness at trial, and in return for his testimony the government agreed not to prosecute.  Duncan testified that McAnalley offered him $5,000 to burn down Sidelines because Ron Jeffreys, who Duncan believed to be the manager of Sidelines, owed McAnalley $25,000.  Duncan ultimately offered his nephew, Sean Jordan, $2,500 to carry out the arson instead.[1]  Jordan accepted Duncan's offer, committed the arson, and was paid by Duncan.  Duncan testified that after he told McAnalley that the arson had been committed by his nephew, Duncan received $100, $1,000, and 1 ounce of marijuana as initial payments from McAnalley.

---

[1] Jordan testified that Duncan told him that the owner, "Tony," wanted the place to be burned down.  The property, however, was in fact owned by Metro Properties, run by Kenneth Crump, and Sidelines itself was owned by Game On, Inc., incorporated in the name of Tad Drake with Ron Jeffreys as a silent partner.

As McAnalley explains on appeal, at trial, his defense tried "to show and argue that the operators [of Sidelines], [Tad] Drake and [Ron] Jeffreys had the real motive for burning [Sidelines], as their business was failing, [and] they had not paid debts or the land owner." For instance, on cross-examination of Kenneth Crump, the owner of Metro Properties, LLC, and Sidelines's landlord, McAnalley elicited testimony that Sidelines sometimes had trouble paying its rent and had not made a certain $25,000 payment on time.

McAnalley also tried to show that Drake and Jeffreys, not McAnalley, had benefited from insurance proceeds in the wake of the fire. Drake testified that Game On had received $56,000 in insurance proceeds. Drake also testified that the underwriters had included a "Tom McAnalley" on the policy. However, there was no testimony from any insurance agents, Drake, or McAnalley himself about whether McAnalley received any insurance money.

## II.

McAnalley argues on appeal that he was unable to sufficiently present a defense relating to Game On's financial health because the district court abused its discretion in excluding four months of financial records totaling roughly 1,800 pages. Specifically, when McAnalley sought to have the records entered into evidence, the court excluded the records under Federal Rule of Evidence 403 because, even if they were relevant, there was undue prejudice and they would

likely confuse the jury because they were complex, and reflected the finances of three businesses, when only one was involved in the arson.

"We review the district court's rulings on admission of evidence for abuse of discretion." United States v. Jimenez, 224 F.3d 1243, 1249 (11th Cir. 2000). Thus, we will affirm unless "the district court has made a clear error of judgment, or has applied an incorrect legal standard." Piamba Cortes v. Am. Airlines, Inc., 177 F.3d 1272, 1306 (11th Cir. 1999) (quotation marks omitted).

A defendant has the constitutional right under the Fifth and Sixth Amendments to present a defense. United States v. Frazier, 387 F.3d 1244, 1271 (11th Cir. 2004) (en banc). "[A] defendant must generally be permitted to introduce": evidence directly pertaining to any element of the charged offense or an affirmative defense; "evidence pertaining to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more of the elements of the charged offense or an affirmative defense more or less certain"; and/or evidence that "tends to place the story presented by the prosecution in a significantly different light." United States v. Hurn, 368 F.3d 1359, 1363 (11th Cir. 2004). Additionally, "a defendant generally has the right to introduce evidence that is not itself tied to any of the elements of a crime or affirmative defense, but that could have a substantial impact on the credibility of an important government witness." Id. Typically, a defendant may present evidence of third-

4

party guilt.  See Holmes v. South Carolina, 547 U.S. 319, 330–31, 126 S. Ct. 1727, 1734–35 (2006) (holding that a state law preventing evidence of third-party guilt was "arbitrary" and thus "violate[d] a criminal defendant's right to have a meaningful opportunity to present a complete defense" (quotation marks omitted)). In a case involving the arson of an insured building, evidence of the business's financial problems may be relevant as proof of the defendant's motive for committing the crime.  Vicksburg Furniture Mfg., Ltd. v. Aetna Cas. & Sur. Co., 625 F.2d 1167, 1171–72 (5th Cir. 1980);[2] see also United States v. Utter, 97 F.3d 509, 512 (11th Cir. 1996) (holding that substantial evidence that a restaurant was having financial difficulties was sufficient circumstantial evidence to support an arson conviction).

However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  Taylor v. Illinois, 484 U.S. 400, 410, 108 S. Ct. 646, 653 (1988).  Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

---

[2] In Bonner v. City of Prichard, this Court accepted as binding precedent all Fifth Circuit cases decided before October 1, 1981.  661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

And in any event, "error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the part[y]." United States v. Cameron, 907 F.2d 1051, 1059 (11th Cir. 1990) (quotation marks omitted); see Fed. R. Evid. 103(a); Fed. R. Crim. P. 52(a). We will therefore reverse only if the complaining party establishes that the evidentiary ruling resulted in a substantial harm, thus warranting reversal of the jury's verdict. Cameron, 907 F.2d at 1059.

Here, the district court did not abuse its discretion when it refused to risk confusion by admitting complex financial statements that combined, without designation among each business, figures from two other businesses not involved in the arson. See Fed. R. Evid. 403.

Also, even if the court erred in not admitting the statements, McAnalley fails to show that the error affected his substantial rights. See Cameron, 907 F.2d at 1059. According to McAnalley, his purpose in introducing the financial statements was to alert the jury to Game On's poor financial state to demonstrate a motive for Sidelines's owners to burn it down. McAnalley successfully elicited testimony from a number of witnesses illustrating Game On's financial difficulties. It is unclear what additional information the jury would have gleaned from the more extensive financial statements that even Drake had trouble deciphering. McAnalley therefore fails to meet his burden to demonstrate that he was substantially prejudiced by the district court's evidentiary ruling.

III.

McAnalley also argues that the court abused its discretion by rejecting his three requested jury charges and that the court improperly responded to a question from the jury. Specifically, McAnalley requested the following three jury charges: Charge A stated that the government claimed that McAnalley violated the law in order to obtain insurance proceeds, and that he denied this, as he had no insurable interest in the property, his name was associated with the insurance policy due to the mistake of others, and thus he could not have received any proceeds as a result of the fire. Charge B generally described and discussed the requirement that someone must have an "insurable interest" in order to receive insurance proceeds and Charge C directly defined "insurable interest" under Alabama law. The court did not give McAnalley's Requested Charges A, B, and C on the basis that they lacked a foundation in evidence, as there had been no testimony from the subject insurance company or its agents.

During the jury's deliberation, it asked the following question of the court: "We, the jury, are having a difficult time reaching a unanimous decision—we are not able to determine if Duncan really received pay from McAnalley ($100, $1,000, "pot"). If McAnalley did pay him, does the record show that his lawyers refuted that McAnalley paid him anything?" The court informed the jury that it could not comment on the evidence, and instead reread a large portion of its former

7

instructions, including the elements of the offense, the government's burden of proof, and the defendant's right not to testify.

We review a claim that the district court refused to give an instruction for an abuse of discretion. United States v. Morris, 20 F.3d 1111, 1114 (11th Cir. 1994). Also, "[a] trial court's response to a jury's question is entrusted to its own sound discretion and a conviction will not be reversed in the absence of an abuse of discretion." United States v. McDonald, 935 F.2d 1212, 1222 (11th Cir. 1991).

The jury should be instructed on a theory of the defense, "[a]s long as there is some basis in the evidence and legal support." United States v. Zlatogur, 271 F.3d 1025, 1030 (11th Cir. 2001). As the Court explained in United States v. Blanton:

> A district court's refusal to give a requested instruction constitutes reversible error if and only if the instruction (1) is correct; (2) is not substantially covered by other instructions which were delivered; and (3) deals with some point in the trial so important that the failure to give this instruction seriously impairs the defendant's ability to defend himself.

793 F.2d 1553, 1560 (11th Cir. 1986) (emphasis added) (quotation marks omitted).

Here, the district court did not abuse its discretion by omitting McAnalley's Requested Charges, or in issuing its response to the jury's question. Any testimony about McAnalley's alleged waiver or receipt of insurance proceeds took place outside the presence of the jury, and later was excluded. Beyond that, the jury did not hear any testimony from an insurance agent about the policy in

8

question.  Contrary to Requested Charge A, the government's case did not hinge

on the theory that McAnalley solicited Duncan to commit arson in order to obtain

the insurance proceeds for himself.  In fact, the government did not even argue

motive and explained in closing that "we don't know why" McAnalley solicited

arson.  Therefore, Requested Charge A lacked a basis in the evidence, and was

thus, properly rejected.  See Zlatogur, 271 F.3d at 1030; Blanton, 793 F.2d at 1560.

For the same reasons, Charges B and C were properly refused as irrelevant.

With respect to the court's response to the jury's question, McAnalley's

argument is without merit, as the court merely informed the jurors that it could not

weigh the evidence for them, and repeated instructions it had already given to the

jury, including the government's burden of proof.

### IV.

Finally, McAnalley asserts that he was denied a fair trial in light of the

cumulative effect of prosecutorial misconduct in his case, including: a conceded

Brady/Giglio[3] violation; the failure to acknowledge a pre-trial stipulation to the

authenticity of documents; the withdrawal of an insurance stipulation; and a

misrepresentation of ownership interests in Sidelines.

We review a prosecutorial misconduct claim de novo.  United States v.

Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006).  "To establish prosecutorial

---

[3] See Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963); Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972).

misconduct, (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." Id. (quotation marks omitted). Where the prosecutorial misconduct involves delayed disclosure of certain evidence, we reverse "only if the defendant can show prejudice." United States v. Bueno-Sierra, 99 F.3d 375, 379 (11th Cir. 1996) (quotation marks omitted). We address a claim of cumulative error by first considering the merit of each claim individually, and then examining the trial "as a whole to determine whether the appellant was afforded a fundamentally fair trial." United States v. Calderon, 127 F.3d 1314, 1333 (11th Cir. 1997).

"Brady requires the prosecution to turn over to the defense any exculpatory evidence in its possession or control." United States v. Jordan, 316 F.3d 1215, 1226 n.15 (11th Cir. 2003). "Giglio requires the prosecution to turn over to the defense evidence in its possession or control which could impeach the credibility of an important prosecution witness." Id. at 1226 n.16. "Impeachment evidence should be disclosed in time to permit defense counsel to use it effectively in cross-examining the witness." Id. at 1253.

McAnalley argues that the government's pervasive misconduct, including an early Brady/Giglio violation, rendered the trial unfair. First, he argues the government committed a Brady/Giglio violation when it did not disclose that it had a deal with Duncan for his testimony and allowed Duncan to testify on direct that

10

he "hope[d]" he would not be prosecuted.  However, the court did not sanction the government because the violation was handled after direct, when McAnalley was allowed to cross-examine Duncan about the deal, and did.  Because the district court timely handled the violation, and the relevant information was revealed to the jury, McAnalley was not substantially prejudiced.  See, e.g., Bueno-Sierra, 99 F.3d at 379–80 (holding that the government's failure to disclose a key government witness's prior inconsistent statement until the seventh day of the trial was improper, but the defendant was not prejudiced because he was able to fully explore the issue on cross examination).

McAnalley also argues that the government engaged in misconduct, improperly allowed by the district court, when the government refused to honor a pre-trial stipulation as to the authenticity of Game On's financial records.  But the government's actions were not improper because it never stipulated to the admission of these records, and the defense was allowed to question a number of witnesses about Sidelines's financial condition.  Rather, during a pre-trial hearing, the government agreed to stipulate to the authenticity of some 1,800 pages of records, but clarified that it was "not going to stipulate that they're in evidence." The court agreed to the stipulation regarding the documents' authenticity, but reserved its right to rule on their admissibility during the trial.  On this record, there was neither misconduct by the prosecution nor error by the court in later

11

allowing the government to challenge the evidence on grounds other than authenticity, such as Rule 403.

McAnalley also argues that the government engaged in misconduct when it withdrew a stipulation that no insurance proceeds had been paid to anyone, including McAnalley.   Initially, the parties agreed to stipulate that "[t]he defendant did not make [or has not made] any claim on any insurance policy and no proceeds have been paid out to any person."  However, the court and the government later learned through Drake's testimony that Drake, through Game On, had actually received proceeds under the policy.  Therefore, the government's decision not to stipulate to the factually incorrect statement that no insurance proceeds had been paid to McAnalley or anyone else did not amount to misconduct.  Furthermore, the court agreed to allow McAnalley to illicit testimony as to whether he had made a claim and instructed the jury that there was "no evidence of anything in . . . regard" to whether McAnalley received insurance proceeds.  Thus, there was no prejudice due to the failure to stipulate.  See Eckhardt, 466 F.3d at 947

Finally, McAnalley argues that the government misconstrued facts regarding the Sidelines's ownership interests, but the record does not support this assertion. Even if the government had misrepresented the interests, the crux of the government's case was not focused on who owned the Sidelines, but rather on

12

McAnalley's role in asking Duncan to set fire to it.  See United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (pointing to the strength of the government's case as a factor in determining whether any errors resulted in prejudice).  On this record, the cumulative effects of any errors resulting from the government's actions did not result in the denial of McAnalley's constitutional right to a fair trial.

For these reasons, we affirm the conviction.

**AFFIRMED.**