[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11537

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DURONEL LOUTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:21-cr-14008-AMC-1

_____

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Duronel Loute appeals his convictions and sentence for individual failure to pay income tax in violation of 26 U.S.C. § 7203. We affirm.

## I.

In February 2021, a federal grand jury charged Loute with nine counts of aiding in the filing of false tax returns (Counts 1–9) and three misdemeanor counts of individual failure to pay tax (Counts 10–12). As relevant to Counts 10–12, the indictment alleged that Loute willfully failed to pay his federal income tax for 2013, 2014, and 2015.

After a five-day trial, a jury found Loute not guilty of Counts 4–7 and guilty of Counts 10–12. (The government dismissed the remaining five counts during trial.) The district court sentenced Loute to a total of 21 months in prison, followed by one year of supervised release.

Loute now appeals. He argues that the district court committed reversible error by admitting his 2016 mortgage loan application and home sale contract in evidence, and by denying his motions to exclude one of the government's witnesses or continue the trial based on the government's late disclosure of impeachment evidence. He also argues that the district court erred by denying his motion for judgment of acquittal based on the sufficiency of the

evidence. And he contends that the district court erred by applying a two-level enhancement for obstruction of justice when calculating his Sentencing Guidelines range.

## II.

We review a district court's rulings on motions to exclude evidence or to continue trial for abuse of discretion. *United States v. Drury*, 396 F.3d 1303, 1315 (11th Cir. 2005); *United States v. Valladares*, 544 F.3d 1257, 1261 (11th Cir. 2008). "We review an alleged *Brady* violation *de novo*."[1] *United States v. Brester*, 786 F.3d 1335, 1338 (11th Cir. 2015). We review the denial of a motion for judgment of acquittal challenging the sufficiency of the evidence de novo. *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011).

When considering the application of a Sentencing Guidelines offense-level enhancement, we review the district court's factual findings for clear error and its application of its findings to the Guidelines de novo. *United States v. Guevara*, 894 F.3d 1301, 1311 (11th Cir. 2018). When the district court's application of the enhancement is based on its assessment of credibility or demeanor—for example, when the enhancement is for obstruction of justice based on the defendant's alleged perjury—we review the court's determination for clear error. *United States v. Jennings*, 599 F.3d 1241, 1254 (11th Cir. 2010); *United States v. Banks*, 347 F.3d 1266, 1269 (11th Cir. 2003).

---

[1] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).

### III.

### A.

Loute objects to the introduction in evidence of his 2016 mortgage loan application and sales contract. He contends that contrary to the district court's ruling, the evidence was not admissible as intrinsic evidence because the loan documents were created several months after his offenses were complete. He also contends that the documents should have been excluded as more prejudicial than probative and misleading to the jury. We reject both arguments.

Rule 404(b) of the Federal Rules of Evidence prohibits "pure propensity evidence"—that is, evidence of other crimes or acts that are not part of the charged offenses but are introduced to prove the defendant's character and that the defendant acted in accordance with that character on a particular occasion. *United States v. Covington*, 565 F.3d 1336, 1341 (11th Cir. 2009); Fed. R. Evid. 404(b)(1). Evidence of uncharged conduct may be admissible for other purposes, however, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). So-called "intrinsic" evidence that "[1] concerns the context, motive, and set-up of the crime and is linked in time and circumstances with the charged crime, or [2] forms an integral and natural part of an account of the crime, or [3] is necessary to complete the story of the crime for the jury" falls outside the scope of Rule 404(b) and is admissible if it satisfies

the requirements of Rule 403. *Covington*, 565 F.3d at 1342; *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by" the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. But the exclusion of relevant evidence under Rule 403 "is an extraordinary remedy" that we use "only sparingly." *Edouard*, 485 F.3d at 1344 n.8 (quotation omitted). Thus, in reviewing the admissibility of evidence under Rule 403, "we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.* (quotation omitted).

Here, the mortgage loan application and sales contract were admissible as intrinsic evidence because they were reasonably necessary to complete the story of Loute's failure-to-pay-tax crimes for the jury. The documents and accompanying testimony showed that Loute ultimately filed the tax returns and established a payment plan for the years at issue when he needed to do so to obtain a home loan. The sales contract showed that Loute agreed to buy a house in Port Saint Lucie, Florida in August 2016, contingent upon his obtaining a mortgage loan for the purchase price. A compliance officer for the mortgage company testified that to qualify for a mortgage, self-employed homebuyers like Loute are required to provide two years of tax returns and either pay the tax they owe or submit proof of an approved payment agreement with the IRS.

Other evidence introduced at trial showed that Loute filed his 2013–2015 tax returns in September 2016—after contracting to buy the house and before submitting his mortgage application. And the mortgage application, which included a September 2016 letter from the IRS confirming his approved plan to make monthly payments on his tax debt for 2013–2015, completed the story by showing that he submitted his tax returns and payment plan with his mortgage application in November 2016, and closed on the home later the same month.

The loan and sale documents were also admissible under Rule 403. Loute argues that the documents were highly prejudicial and misleading to the jury because they gave the impression that he had money to buy the home—and therefore could have paid his taxes—when in fact his former girlfriend, Natalie Delions, gave him the money for the down payment, closing costs, and other expenses related to the home purchase. In context, however, the documents were neither unduly prejudicial nor misleading. The mortgage company compliance officer who introduced the mortgage application and sale contract testified that the bank account from which the deposit and closing costs were drawn was a joint account held by Loute and Delions. The compliance officer also testified that Delions, not Loute, wired the funds from that account to the title agency.

The next day, the government called Delions, who testified that she personally paid all the costs to purchase the home, including the deposit and closing costs. Delions testified that she and

Loute decided to buy a house together using money that she received in a settlement from a car accident. She explained that Loute applied for the mortgage because he had better credit, but she paid all the related costs and added Loute as a co-signer on her bank account for the limited purpose of obtaining the mortgage. Delions did not know how much Loute earned, but she testified that he could not have purchased the house on his own, and he did not contribute any money to help with the purchase.

Any potential for the mortgage and sale documents to mislead the jury into believing that Loute paid the deposit and closing costs for the home purchase was cut off by the testimony of the two related witnesses. The documents were relevant and admissible under Rule 403 and were not subject to Rule 404(b)'s bar on pure propensity evidence. The district court therefore did not abuse its discretion by admitting them at trial.

**B.**

Loute also contends that the district court erred when it denied his motion to exclude Delions's testimony following the government's late disclosure of impeachment evidence, and abused its discretion when it denied his motion for a continuance to allow him to investigate the impeachment evidence and prepare to cross-examine Delions. More specifically, Loute argues that the government's failure to disclose—until just before trial—that Delions had had a stroke that affected her memory violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963).

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To establish a *Brady* violation warranting reversal of his conviction, a defendant must show that (1) the prosecution suppressed evidence, intentionally or inadvertently; (2) the evidence was favorable to the accused because it was either exculpatory or impeaching; and (3) the defendant suffered prejudice. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). To show prejudice, the defendant must establish that the suppressed evidence was "'material' for *Brady* purposes"—in other words, that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280, 282.

Evidence affecting the credibility of a government witness is subject to disclosure as *Brady* material when the witness's reliability may impact the jury's verdict. *Giglio v. United States*, 405 U.S. 150, 154 (1972). "Impeachment evidence should be disclosed in time to permit defense counsel to use it effectively in cross-examining the witness." *United States v. Jordan*, 316 F.3d 1215, 1253 (11th Cir. 2003). "Delayed disclosure may be grounds for reversal, but only if the defendant can show prejudice, e.g., the material came so late that it could not be effectively used." *United States v. Bueno-Sierra*, 99 F.3d 375, 379 (11th Cir. 1996) (quotation omitted). A delay in disclosing impeachment evidence does not prejudice the defendant where the trial court takes remedial measures that give the

defendant adequate opportunity to review the evidence and cross-examine the witness with it. *See id.* at 379–80.

That is the case here. The prosecutor disclosed Delions's stroke in an email sent late on the Saturday afternoon before jury selection. The email stated that Delions had had a "mini-stroke" in October 2020 (14 months earlier) that affected Delions's memory "a little;" including, for example, her ability to remember people. The email also disclosed that Delions was taking medication for anxiety, depression, and vertigo, but she did not feel that the medications impacted her ability to understand what was "going on around her." The trial court denied Loute's subsequent motion to exclude Delions's testimony or to continue the trial, but it (1) confirmed that the government had no medical records or additional information about Delions's condition aside from its email disclosure, Delions's presentence investigation report, and Delions's testimony at various hearings in her own criminal proceedings; (2) provided Loute with a redacted copy of Delions's presentence investigation report and ordered the government to provide transcripts of the relevant hearings; (3) recessed early on Monday following jury selection and instructed the government not to call Delions as a witness until Wednesday at the earliest, to give Loute's counsel time to review and investigate the new information; and (4) instructed the government to make Delions available for questioning by Loute's attorney outside the presence of the jury so that defense counsel could explore the impact of her medical conditions before she testified.

These measures gave Loute a sufficient opportunity to consider and use the impeachment information despite its late disclosure. *See id.* Thus, the district court did not abuse its discretion in denying Loute's motion to continue the trial indefinitely so that he could conduct a more thorough investigation. *See Valladares*, 544 F.3d at 1262 (no abuse of discretion where defendant failed to show that he was prejudiced by the denial of a continuance).

Moreover, Loute has not shown that his due process rights were violated here because he has not explained how an earlier disclosure could possibly have changed the jury's verdict in his favor. *See Strickler*, 527 U.S. at 281 ("strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict"). In the district court, Loute argued that additional time to investigate Delions's health would have allowed him to cross-examine her more effectively on his alleged involvement with preparing false tax returns for clients of his tax-preparation business—the charges on which the jury ultimately acquitted him. He does not contend that earlier disclosure of her medical issues could have impacted the jury's guilty verdicts on the charges of failure to pay income tax; indeed, he contends that Delions's testimony generally supported his defense on those charges. We find no ground for reversal in the government's late disclosure of impeachment evidence or the district court's refusal to exclude Delions's testimony.

## C.

Next, we consider Loute's argument that the district court erred in denying his motion for judgment of acquittal because the evidence presented at trial was insufficient to support his convictions for willful failure to pay income tax.  In reviewing this issue, we view the evidence in the light most favorable to the government and make all reasonable inferences and credibility choices in support of the jury's verdict.  *Gamory*, 635 F.3d at 497.  We will affirm the denial so long as a reasonable trier of fact could determine that the evidence established the defendant's guilt beyond a reasonable doubt.  *Id.*  "The evidence need not be inconsistent with every reasonable hypothesis other than guilt, and we allow the jury to choose among several reasonable conclusions to be drawn from the evidence."  *United States v. Hunt*, 526 F.3d 739, 745 (11th Cir. 2008).

Section 7203 of Title 26 makes it a federal crime to "willfully" fail to make a return or pay a tax imposed by the Internal Revenue Code "at the time or times required by law or regulations."  To prove willfulness in this context, the government must prove "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."  *Cheek v. United States*, 498 U.S. 192, 201 (1991).

Here, Loute conceded that he had an obligation to pay income tax and that he failed to pay the taxes for 2013, 2014, and 2015 on time.  But he argues that the government did not prove that his failure to pay was voluntary and intentional because the evidence

showed that he was financially unable to pay the taxes when they were due, and that he believed that he could pay within three years without violating the law.

The district court did not err in denying Loute's motion for judgment of acquittal because sufficient evidence existed for a reasonable jury to find him guilty beyond a reasonable doubt. Regarding Loute's ability to pay, the government presented evidence of his income, expenditures, and tax debt for 2013, 2014, and 2015. The evidence showed that Loute was the sole owner of a tax-preparation business called DTS Plus with several offices in Florida. When he eventually filed his tax returns, Loute reported a 2013 net income of $15,314 from DTS Plus, resulting in a tax liability of $2,624. That same year, records for DTS Plus's bank accounts—which were under Loute's exclusive control, and which he used for both business and personal expenses—showed total deposits of approximately $85,000 into DTS Plus's accounts, and debits of approximately $80,000, including more than $20,000 in cash withdrawals (which may or may not have been business-related) and approximately $5,000 in personal purchases.

For 2014, Loute reported a net income of $60,301 and $16,130 in tax liability. DTS Plus's bank records for 2014 showed roughly $280,000 in deposits and $270,000 in debits, including almost $50,000 in cash withdrawals and more than $43,000 in personal expenditures. And for 2015, Loute reported a net income of $59,872 and $15,866 in tax due. DTS Plus bank records for that year showed deposits totaling over $330,000 and more than $300,000 in

debits, including approximately $30,000 in cash withdrawals and more than $40,000 in personal expenditures. Loute did not declare any dependents on his tax returns for the relevant years, though he testified that he had been supporting three of his own children and one of Delions's children.

As discussed above, the government also presented Loute's 2016 home-purchase contract and mortgage application. Those documents indicated that when Loute was required to file his taxes and make payment arrangements with the IRS in order to buy a house, he did so with no apparent difficulty.

As to Loute's claim that he believed he could legally pay his taxes within three years, the government presented evidence of Loute's training and experience preparing tax returns for clients of DTS Plus. Loute's former live-in girlfriend, Delions, testified that Loute owned his tax preparation business when they met in 2011 or 2012. Delions began working for the business, and both she and Loute attended training given by a tax software company. During Delions's early years at DTS Plus, Loute prepared tax returns himself. In later years, he spent most of his time outside the office promoting the business.

Loute also testified about his training and experience, as well as his financial ability to pay his taxes when they were due. He testified that he had no experience in accounting or bookkeeping before becoming a tax preparer in 2010 or 2011. He did not graduate from high school but took and passed the General Educational Development (GED) test. He got started in the tax business by

working at Minute Tax for about two months preparing tax returns. After that first tax season, he approached the owner of another business, Tax USA, for assistance in opening his own office. He received training in preparing tax returns from Tax USA and from Sigma Tax Pro, and in 2013, he opened DTS Plus using $10,000–$20,000 in loans from Tax USA.

The terms of the loan required Loute to repay the loan principal plus 30% of DTS Plus's profits for the year. In 2014, 2015, and 2016, Loute repeated the process of borrowing money to open DTS Plus for tax season and paying back the principal plus 30% of the company's profits as the season progressed. He explained that he had to borrow money every year to operate the business because after paying off the loans, tax-preparer commissions, and other expenses, he was "left with nothing."

Loute testified that he did not pay his income taxes immediately because he "didn't have much money" and thought that he "had up to three years to file the tax return." He admitted, however, that he worked as a tax preparer in 2013, 2014, and 2015, and he knew that his clients had to file their tax returns by April 15 of the following year.

The evidence was sufficient to support the jury's guilty verdict. Loute's bank records and income tax returns supported an inference that he was financially able to pay his taxes—or at least, to make monthly payments on his tax debt by arrangement with the IRS—when they were due. And evidence that he received training in preparing tax returns, prepared tax returns for his clients

for several years, and knew that his clients' tax returns were due by April 15 supported a finding that he knew his taxes were also due on April 15 of each year, rather than within three years as he testified.

### D.

Last, Loute argues that the district court erred in applying a two-level enhancement for obstruction of justice under § 3C1.1 of the Sentencing Guidelines. The enhancement increased Loute's Guidelines sentencing range from 15–21 months to 21–27 months in prison.

A defendant's Sentencing Guidelines offense level may be enhanced by two levels if the government shows by a preponderance of the evidence that he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing" of his offense of conviction, and that his obstructive conduct related to his offense of conviction, any relevant conduct, or a closely related offense. U.S.S.G. § 3C1.1; *see United States v. Kinard*, 472 F.3d 1294, 1298 (11th Cir. 2006). "The commission of perjury under oath on material matters, not due to confusion, mistake, or faulty memory, is grounds for an obstruction enhancement." *United States v. McKinley*, 732 F.3d 1291, 1298 (11th Cir. 2013).

Here, the district court did not clearly err in determining that Loute committed perjury when he testified that he believed that he had up to three years to file his tax returns. *See Jennings*, 599 F.3d at 1254; *Banks*, 347 F.3d at 1269. The evidence at trial showed

that Loute owned and operated a tax preparation business, that he was trained to prepare individual tax returns, and that he personally prepared tax returns for his clients beginning in 2011 or 2012. Loute also admitted under oath that he knew that his clients had to file their taxes by April 15 of the following year.  Given this evidence, the district court reasonably inferred that Loute knew that he was required to file his own taxes by April 15 of the following year, and that his testimony to the contrary was not the result of confusion, mistake, or faulty memory.  And because Loute's perjured testimony was related to the element of willfulness, his obstructive conduct related to his offense of conviction.  *See* 26 U.S.C. § 7203.  The district court therefore did not err in applying a two-level enhancement for obstruction of justice.  *See* U.S.S.G. § 3C1.1; *McKinley*, 732 F.3d at 1298.

## IV.

We conclude that the district court committed no reversible error in its rulings admitting evidence, declining to continue the trial, and denying Loute's motion for judgment of acquittal, or in applying a two-level enhancement for obstruction of justice when calculating his Sentencing Guidelines range.  We therefore affirm Loute's convictions and sentence.

**AFFIRMED.**