[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14655
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cr-60038-WPD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL MCKINLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 15, 2013)

Before TJOFLAT, PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Daniel McKinley appeals his 209-month total sentence imposed by the district court after a jury convicted him of interference with commerce by violence, in violation of 18 U.S.C. § 1951(a) (Count 1); and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2). McKinley maintains the district court erred by (1) violating his Sixth Amendment rights by imposing a seven-year mandatory minimum sentence on Count 2 based on the judicially-found fact that he brandished a firearm; (2) assessing him a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice; and (3) imposing an above-guidelines sentence as to Count 1. After a thorough review of the record and consideration of the parties' briefs, we affirm.

## I. BACKGROUND

On September 23, 2011, a man wearing a black mask and carrying a gun entered the convenience store at a Chevron gas station in Lauderdale Lakes, Florida. Mohammad Khan, the manager and part-owner of the station who was working that day, immediately tried to close himself in the store's cashier's booth using a bulletproof door. The robber, however, prevented the door from closing with his left hand. Using his right hand, the robber pointed his gun at Khan and ordered him to open the door. After Khan obeyed, the robber emptied two cash registers and exited the booth. Khan then succeeded in locking himself inside the

2

booth, but, in the process, also locked the robber inside the store. Unable to leave, the robber pointed his gun at Khan and screamed at him to open the door. Khan unlocked the door using a button beneath the cash register, and the robber kicked the door open and exited.

While Khan was waiting for the police to arrive, he noticed several blood stains inside the store. Once the police arrived, an officer collected blood samples from around the exit door, the door inside the cashier's booth, and the floor inside the cashier's booth. The officer also collected a fingerprint from the door inside the cashier's booth.

A federal grand jury subsequently returned a two-count indictment charging McKinley with interfering with commerce by threats or violence and using or carrying a firearm during and in relation to a crime of violence. In relevant part, Count 2 specifically charged that McKinley "did knowingly use and carry a firearm during and in relation to a crime of violence, and did knowingly possess a firearm in furtherance of a crime of violence . . . ." However, the indictment cited 18 U.S.C. § 924(c)(1)(A)(ii), the statutory provision that prescribes a seven-year mandatory minimum sentence for brandishing a firearm during and in relation to a crime of violence.

At trial, the Government presented evidence that McKinley's fingerprints positively matched the fingerprint taken from the door in the cashier's booth, and

3

his DNA matched that in the blood samples obtained from the crime scene. While testifying in his own defense, McKinley explained he was a regular visitor at Khan's Chevron station, but repeatedly denied robbing the gas station. He also denied that his blood was present in the convenience store, and maintained the Government's DNA analysis was inaccurate. McKinley similarly denied his fingerprint was found inside the cashier's booth. The jury convicted McKinley on both counts. The verdict form provided that the jury found McKinley guilty as to Counts 1 and 2 "as charged in the Indictment." The form, however, did not include any specific findings of fact.

In preparing McKinley's presentence investigation report (PSI), the probation officer assigned him a base-offense level of 20, pursuant to U.S.S.G. § 2B3.1(a). McKinley received an additional two points under § 2B3.1(b)(2)(F) because the crime involved threats of death, as well as a two-level enhancement under § 3C1.1 for obstruction of justice, yielding a total adjusted offense level of 24. Based on a 1990 state conviction for grand theft, McKinley was assessed three criminal history points resulting in a criminal history category of II. The PSI also enumerated McKinley's numerous other state convictions for offenses dating from 1972 through 1999—including robbery, grand theft, burglary, drug offenses, and resisting an officer without violence—but those offenses did not figure into his criminal history score because of their age. Given a total adjusted offense level of

4

24 and a criminal history category of II, McKinley's guidelines range for Count 1 was 57 to 71 months' imprisonment, with a statutory maximum of 20 years' imprisonment. The PSI further noted that McKinley brandished a firearm during the robbery, so his guidelines range for Count 2 was the statutory minimum sentence of seven years' imprisonment enumerated in 18 U.S.C. § 924(c)(1)(A)(ii) which was to run consecutive to his sentence for Count 1.

Prior to sentencing, the district court issued a Federal Rule of Criminal Procedure 32(h) notice that it was contemplating departing upward from McKinley's advisory guidelines range pursuant to U.S.S.G. § 4A1.3, or varying upward pursuant to 18 U.S.C. § 3553(a), because his criminal history category of II substantially underrepresented the seriousness of his criminal history and the likelihood he would commit future crimes.

At the sentencing hearing, the district court explained to McKinley that, while the jury convicted him of using a firearm during a crime of violence, the court was authorized to increase his mandatory minimum sentence if the court found that he brandished the firearm during the commission of the robbery. The district court clarified, "I can give you a five-year mandatory minimum consecutive [sentence] if I think you just carried [the firearm] or used it. If I think that you brandished it, then I can give you a seven-year mandatory minimum." Before imposing McKinley's sentences, the court also stated:

5

> I think that Mr. McKinley has unscored stale convictions that the Court can and should take into account . . . If you score all of those convictions, had they not been stale, he would come up with, I think, 17 criminal history points, which is a category six criminal history. I think that's the appropriate way under the Guidelines to have scored Mr. McKinley. So, under the Guideline rules, I depart upward to an offense level 24, criminal history category six, for a range of a hundred to . . .125 months.

The court further explained that, considered as an upward variance, an above-guidelines sentence would be appropriate to protect the public, promote respect for the law, and to deter others. Accordingly, the district court sentenced McKinley to 125 months' imprisonment as to Count 1, and a consecutive 84 months' imprisonment as to Count 2, for a total of 209 months' imprisonment. This appeal followed.

## II. DISCUSSION

### A. *Seven-Year Mandatory Minimum Sentence*

McKinley argues for the first time on appeal that the district court unconstitutionally increased his statutory mandatory minimum sentence as to Count 2 based on a fact not found by the jury beyond a reasonable doubt. Specifically, he maintains that, under the Sixth Amendment, the jury was required to find he brandished a firearm rather than simply used or carried one in the commission of his offense.[1] In response, the Government argues only that, at the

---

[1] McKinley also argues the imposition of an enhanced sentence violated his Fifth Amendment rights, by which we understand him to be attempting to raise a challenge to the

6

time McKinley was sentenced, the Supreme Court's decision in *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406 (2002), squarely foreclosed his argument.

While McKinley's appeal was pending before this Court, the Supreme Court decided *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013), which explicitly overruled *Harris* and held that any fact that increases a defendant's mandatory minimum sentence is an element of the offense that must be submitted to the jury and proved beyond a reasonable doubt. It is by now well established that "[t]he relevant time period for assessing whether an error is plain is at the time of appellate consideration." *United States v. Bane*, 720 F.3d 818, 830 (11th Cir. 2013) (quotation omitted); *see also Henderson v. United States*, 133 S. Ct. 1121, 1130-31 (2013). As such, we must address the impact of *Alleyne* on McKinley's seven-year sentence for brandishing a firearm during and in relation to a crime of violence.

*Alleyne* affords McKinley minimal relief, however, because he failed to preserve his argument that his Sixth Amendment rights were violated by the district court's imposition of an enhanced mandatory minimum sentence. *See United States v. Pielago*, 135 F.3d 703, 708 (11th Cir. 1998) ("The plain error rule places a daunting obstacle before [the appellant]."). McKinley did not raise a

---

adequacy of his indictment. McKinley, however, did not elaborate any argument regarding the indictment in his initial brief or cite any authority relevant to such an argument. Accordingly, we deem any Fifth Amendment argument abandoned. *See United States v. Curtis*, 380 F.3d 1308, 1310 (11th Cir. 2004). Even if the issue is not abandoned, we note the indictment cited the correct statutory provision, which was likely sufficient. *See United States v. Nealy*, 232 F.3d 825, 830 n.5 (11th Cir. 2000); *United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998).

constitutional objection to his sentence before the district court.  We have explained that "not every objection is a constitutional objection," and have held that to preserve a claim of error under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), a defendant must raise an objection framed in constitutional terms.  *See United States v. Candelario*, 240 F.3d 1300, 1303-04 (11th Cir. 2001).  Thus, because *Alleyne* was an extension of *Apprendi*, *see* 133 S. Ct. at 2160, we adopt the same rule and hold that to preserve a claim of *Alleyne* error, a defendant must make a timely constitutional objection.[2]  We further hold that, as with other alleged constitutional errors, specifically errors of the *Apprendi* variety, the failure to make a timely objection results in this Court's application of plain error review.  *See, e.g.*, *United States v. Rodriguez*, 398 F.3d 1291, 1297-98 (11th Cir. 2005); Fed. R. Crim. P. 52(b).

Under the plain error standard, "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights."  *United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002) (quotations and brackets omitted).  If all three conditions are met, we may then exercise our discretion to correct the error, "but only if (4) the error

---

[2] A defendant may make such an objection by, for example, (1) invoking *Alleyne* or its direct predecessors; (2) objecting that a fact relevant to an increased mandatory minimum should be submitted to the jury; or (3) arguing that such a fact must be proved beyond a reasonable doubt.  *See United States v. Munoz*, 430 F.3d 1357, 1374 (11th Cir. 2005).

8

seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation and brackets omitted).

In pertinent part, 18 U.S.C. § 924(c)(1)(A) provides a five-year mandatory minimum sentence for any person who, during and in relation to a crime of violence that may be prosecuted in federal court, uses or carries a firearm. 18 U.S.C. § 924(c)(1)(A)(i). However, if the defendant brandishes the firearm during the commission of the crime, the mandatory minimum sentence is increased by two years, to seven years' imprisonment. *Id.* § 924(c)(1)(A)(ii). The statute defines "brandish" to mean "with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." *Id.* § 924(c)(4).

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. at 2362-63. Subsequently, the Supreme Court held in *Harris* that a fact increasing a defendant's mandatory minimum sentence, specifically brandishing a firearm under § 924(c)(1)(A)(ii), was not subject to the *Apprendi* rule and could be found by a sentencing judge rather than a jury. *Harris*, 536 U.S. at 556-57, 568-69, 122 S. Ct. at 2414, 2420. As noted, the Supreme

Court overruled *Harris* in *Alleyne*, concluding that the "distinction between facts that increase the statutory maximum and facts that increase only the mandatory minimum" was inconsistent with *Apprendi*. 133 S. Ct. at 2155. Instead, the Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Id.*

In *Alleyne*, a jury convicted the defendant of, *inter alia*, robbery affecting interstate commerce, and using or carrying a firearm in relation to a crime of violence, in violation of § 924(c)(1)(A). *Id.* at 2155-56. As the Supreme Court explained, "[t]he jury indicated on the verdict form that Alleyne had used or carried a firearm during and in relation to a crime of violence, but did not indicate a finding that the firearm was brandished." *Id.* at 2156 (quotations and alterations omitted). Over Alleyne's objection, the district court imposed a seven-year mandatory minimum sentence under § 924(c)(1)(A)(ii), and the Fourth Circuit affirmed. *Id.*

In vacating the Fourth Circuit's judgment and remanding for resentencing, the Supreme Court held that, "[w]hile *Harris* limited *Apprendi* to facts increasing the statutory maximum, the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum." *Id.* at 2160. The Court explained, "[i]t is indisputable that a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed." *Id.*

10

Thus, "because the legally prescribed range *is* the penalty affixed to the crime, . . . it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense." *Id.* (emphasis in original). The Court reasoned that "the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." *Id.* at 2161. Because there was "no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum," the Supreme Court expressly overruled *Harris* as inconsistent with *Apprendi*. *Id.* at 2163. The Court then held that the district court's finding by a preponderance of the evidence that Alleyne brandished a firearm violated his Sixth Amendment rights, and remanded for resentencing consistent with the jury's verdict. *Id.* at 2163-64.

In this case, we will assume, *arguendo*, that McKinley demonstrated error that is plain under *Alleyne*. We will also assume for the sake of argument that the alleged error affected his substantial rights. Nevertheless, McKinley is not entitled to correction of the alleged error because he has not satisfied the fourth prong of plain error review. *See Cotton*, 535 U.S. at 631, 122 S. Ct. at 1785. The Supreme Court has explained that where the evidence of a statutory element of an offense is overwhelming and essentially uncontroverted, there is no basis for concluding the error seriously affected the fairness, integrity, or public reputation of the judicial

11

proceedings. *Id.* at 632-33, 122 S. Ct. at 1786. In the instant case, the evidence that McKinley brandished a firearm was overwhelming. Khan testified that, after the gas station robber prevented the bulletproof door on the cashier's booth from closing, the robber pointed his gun at Khan and ordered him to open the door. Similarly, after Khan inadvertently locked the robber inside the store, the robber again pointed his gun at Khan and screamed at him to open the exit door. Another witness who observed the robbery from his parked car outside the store testified that he saw the robber waiving a gun and shouting. *See* 18 U.S.C. § 924(c)(4) (defining the term "brandish").

Although McKinley repeatedly denied committing the robbery, and objected to the PSI on that same basis, McKinley's testimony was convincingly controverted by DNA and fingerprint evidence establishing his presence inside the cashier's booth. In fact, his denial of any involvement in the offense was so implausible as to amount to perjury, as discussed below. Accordingly, given such evidence, there is no basis for us to conclude the alleged *Alleyne* error seriously affected the fairness, integrity, or public reputation of judicial proceedings, and we affirm McKinley's 84-month sentence on Count 2.

### B. Obstruction of Justice Enhancement

McKinley also argues that the district court erred by assessing him a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. He

12

maintains that he did not provide materially false testimony and simply exercised his constitutional right to proceed to trial.

The district court did not clearly err in imposing an enhancement for obstruction of justice. *See United States v. Jennings*, 599 F.3d 1241, 1254 (11th Cir. 2010). Section 3C1.1 provides for a two-level increase to a defendant's base offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. The commission of perjury under oath on material matters, not due to confusion, mistake, or faulty memory, is grounds for an obstruction enhancement. *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993); *United States v. Williams*, 627 F.3d 839, 845 (11th Cir. 2010); U.S.S.G. § 3C1.1, comment. (n.4(B)).

The record fully supports the district court's finding that McKinley perjured himself because his testimony that he had no involvement in the robbery was material to the issue of his guilt, *see* U.S.S.G. § 3C1.1, comment. (n.6), and was expressly contradicted by DNA and fingerprint evidence from the scene of the crime. Furthermore, while a defendant has a right to testify on his own behalf, the Supreme Court has made it abundantly clear that "a defendant's right to testify

13

does not include a right to commit perjury." *Dunnigan*, 507 U.S. at 96, 113 S. Ct. at 1117.[3]

### C. Upward Departure or Variance

McKinley further asserts the district court erred in imposing an above-guidelines sentence on Count 1. The district court, however, did not abuse its discretion in imposing McKinley's above-guidelines sentence. *See Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007) ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard.").

Under § 4A1.3, a district court may depart from the advisory sentencing range "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). The extent of the departure should be determined by reference to the criminal history category "applicable to defendants whose criminal history or likelihood to recidivate most closely resembles" that of the individual being sentenced. *Id.* § 4A1.3(a)(4)(A).

---

[3] Because we may affirm the district court on any ground supported by the record, *United States v. Hall*, 714 F.3d 1270, 1271 (11th Cir. 2013), we need not consider the district court's alternative holding that the § 3C1.1 enhancement was also warranted because McKinley made phone calls following his arrest purportedly instructing his daughter to destroy physical evidence.

On this record, we cannot say the district court abused its discretion in departing upward based on McKinley's extensive criminal history, as expressly contemplated by § 4A1.3(a).[4]  McKinley had numerous prior convictions that were not counted in computing his criminal history score.  His offenses spanned most of his adult life, ranging from the time he was 18 years' old until he was at least 45 years' old.  With more than 25 years of criminal history encompassing crimes from burglary and robbery to grand theft and reckless driving, we agree with the district court that the assessment of only 3 criminal history points substantially underrepresented McKinley's criminal history and likelihood of recidivism.

In the alternative, McKinley's 125-month sentence was appropriate as an upward variance.  As the district court found, the sentence was appropriate in order to protect the public, to promote respect for the law, and to deter others.  *See* 18 U.S.C. § 3553(a); *United States v. Early*, 686 F.3d 1219, 1222 (11th Cir. 2012). We also note that McKinley's sentence was well below the statutory maximum of 20 years' imprisonment, which is a further indicator the sentence was reasonable. *See* 18 U.S.C. § 1951(a); *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).  Accordingly, we affirm McKinley's 125-month sentence on Count 1.

---

[4] McKinley does not argue the district court erred by failing to first explicitly consider whether a criminal history category of III was appropriate, *see United States v. Valdes*, 500 F.3d 1291, 1292 n.1 (11th Cir. 2007), and the issue is therefore waived or abandoned, *see Curtis*, 380 F.3d at 1310 (explaining the "long-standing rule in this circuit, as well as in the federal rules themselves, that issues not raised by a defendant in his initial brief on appeal are deemed waived").

15

## III. CONCLUSION

For the foregoing reasons, McKinley's sentences are **AFFIRMED**.