[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15937

_____

D.C. Docket No. 1:11-cr-00455-ODE-CCH-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DYSON ONNIE MCCRAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 18, 2014)

Before ANDERSON and EBEL,* Circuit Judges, and UNGARO,** District Judge.

_____

*Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by
    designation.

**Honorable Ursula Ungaro, United States District Judge for the Southern District of Florida,
    sitting by designation.

PER CURIAM:

Dyson Onnie McCray appeals his 186-month total sentence imposed after a jury convicted him of one count of armed robbery, in violation of 18 U.S.C. § 2113(a) and (d) (Count I), and one count of knowingly using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count II).  McCray first argues that his Sixth Amendment right to a trial by jury was violated by the district court's imposition of a seven-year mandatory minimum sentence as to Count II based on a finding by the district judge, rather than the jury, that McCray brandished a firearm during the bank robbery.  Second, McCray contends that the district court clearly erred by imposing a two-level enhancement for his purported leadership role in the offense.  Finally, McCray contends his sentence is substantively unreasonable.  We affirm.

I.

This case arises from the armed robbery of a Wells Fargo bank in Doraville, Georgia, on August 12, 2012.  On that date, two men stormed the bank while a third man waited outside.  They demanded money at gunpoint and fled with $25,017.  While making their escape, two of the suspects ran a red light and crashed their vehicle into a pedestrian van.  They then fled on foot.  By the end of August, law enforcement authorities had arrested McCray and two other men, Charles William Daniels and Jamail Christopher Biscaino, for their involvement in

2

the robbery.  A federal grand jury indicted McCray and his two codefendants on one count of aiding and abetting one another in the commission of armed bank robbery, and one count of knowingly using and carrying a firearm during and in relation to a crime of violence.  The indictment stated that McCray used or carried a firearm during a crime of violence—which is prohibited by 18 U.S.C. § 924(c)(1)(A)(i) and carries a mandatory minimum sentence of five years' imprisonment—but cited 18 U.S.C. § 924(c)(1)(A)(ii)—the subsection that prescribes a seven-year mandatory minimum sentence for *brandishing* a firearm. At the end of McCray's four-day trial, the district court instructed the jury with regard to Count II that McCray could only be found guilty if the government proved beyond a reasonable doubt: "First, that the defendant committed the bank robbery charged in Count 1 of the indictment; secondly, that the defendant knowingly used or carried a firearm; third, that the defendant used the firearm in relation to or carried the firearm during and in relation to the bank robbery crime." Similarly, tracking the language of the indictment, the verdict form stated, "Count 2: Using a Firearm in Relation to or Carrying a Firearm During and in Relation to Commission of a Crime of Violence, 18 U.S.C. 924(c)(1)(A)(ii), and Section 2." The jury convicted McCray on both counts, and the district court sentenced him to seven years' imprisonment on Count II.

3

On appeal, McCray argues that his Sixth Amendment right to a trial by jury was violated when the district court sentenced him to seven years' imprisonment based on the finding that he brandished a firearm.  He maintains that the indictment failed to allege that he brandished a firearm and that the jury failed to find that he brandished a firearm, and he denies that he even possessed a firearm during the commission of the charged offense.

We review de novo preserved claims of error under Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), because the applicability of Apprendi to a specific case is a pure question of law.  See United States v. Candelario, 240 F.3d 1300, 1306 (11th Cir. 2001); United States v. Rogers, 228 F.3d 1318, 1321 (11th Cir. 2000), abrogated on other grounds by United States v. Sanchez, 269 F.3d 1250, 1277–80 (11th Cir. 2001) (en banc).  Because Alleyne v. United States is an extension of Apprendi, and its applicability to a specific case is a pure question of law, we will review preserved claims of Alleyne error de novo.  See Alleyne v. United States, 570 U.S. ____, ____, 133 S. Ct. 2151, 2160 (2013).

In relevant part, 18 U.S.C. § 924(c)(1)(A) provides the applicable mandatory minimum sentence for any person who uses or carries a firearm during or in relation to a crime of violence.  The statute provides a five-year mandatory minimum sentence for any person who uses, carries, or possesses a firearm in furtherance of a crime of violence.  Id. § 924(c)(1)(A)(i).  But if the defendant

4

*brandishes* the firearm during the commission of the crime, the mandatory minimum sentence is increased by two years, to seven years' imprisonment. Id. § 924(c)(1)(A)(ii). The statute defines "brandish" to mean "with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." Id. § 924(c)(4); see also Dean v. United States, 556 U.S. 568, 572–73, 129 S. Ct. 1849, 1853 (2009) (noting that "[t]he defendant must have intended to brandish the firearm").

In Apprendi, the Supreme Court held as a matter of constitutional law that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. at 2362–63. In the wake of Apprendi, we determined that "*Apprendi* did not recognize or create a structural error that would require per se reversal," and that Apprendi violations are therefore subject to harmless error review. United States v. Nealy, 232 F.3d 825, 829 (11th Cir. 2000); see also United States v. Allen, 302 F.3d 1260, 1276 (11th Cir. 2002) ("This circuit has recognized repeatedly that where an *Apprendi* violation exists, . . . a reviewing court must engage in a harmless error analysis."). We have emphasized that "*Apprendi* errors do not fall within the limited class of fundamental constitutional errors that defy analysis by harmless error standards."

5

Candelario, 240 F.3d at 1307 (internal quotation marks omitted).  "[A] constitutional error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  Nealy, 232 F.3d at 829 (internal quotation marks omitted); see also Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967).

Two years after deciding Apprendi, the Supreme Court held in Harris v. United States, 536 U.S. 545, 556, 122 S. Ct. 2406, 2414 (2002), overruled by Alleyne, 570 U.S. at ____, 133 S. Ct. at 2156, that for purposes of § 924(c)(1)(A)(ii), brandishing a firearm was a sentencing factor that did not need to be proved to a jury but instead could be found by a judge.  The Court expressly declined to apply Apprendi to facts increasing a defendant's mandatory minimum sentence.  Id. at 568–69, 122 S. Ct. at 2419–20.  In Alleyne, however, the Supreme Court overruled Harris, concluding that the "distinction between facts that increase the statutory maximum and facts that increase only the mandatory minimum" was a false one, and was inconsistent with Apprendi's command.  570 U.S. at ____, 133 S. Ct. at 2155.  Instead, the Court held:

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt.  Mandatory minimum sentences increase the penalty for a crime.  It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

Id. (citation omitted). In <u>Alleyne</u>, the defendant and an accomplice robbed a store manager who was on his way to the bank to deposit money. <u>Id.</u> During the robbery, the defendant's accomplice approached the manager with a gun and demanded that he hand over the money. <u>Id.</u> A jury convicted the defendant of robbery affecting interstate commerce and of using or carrying a firearm in relation to a crime of violence, in violation of § 924(c)(1)(A). <u>Id.</u> at ____, 133 S. Ct. at 2155–56. As the Supreme Court explained, "[t]he jury indicated on the verdict form that Alleyne had used or carried a firearm during and in relation to a crime of violence, but did not indicate a finding that the firearm was brandished." <u>Id.</u> at ____, 133 S. Ct. at 2156 (internal quotation marks and alterations omitted). The defendant's presentence investigation report recommended a mandatory minimum seven-year sentence under § 924(c)(1)(A)(ii), which the district court imposed over Alleyne's objection. <u>Id.</u> The Fourth Circuit affirmed. <u>Id.</u>

In vacating the Fourth Circuit's judgment and remanding for resentencing, the Supreme Court held that "[w]hile *Harris* limited *Apprendi* to facts increasing the statutory maximum, the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum." <u>Id.</u> at ____, 133 S. Ct. at 2160. The Court explained that "[i]t is indisputable that a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed." <u>Id.</u> Thus, "because the legally prescribed range *is* the penalty affixed to

7

the crime, . . . it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense." Id.  The Court reasoned that "the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." Id. at ____, 133 S. Ct. at 2161.  Because there was "no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum," the Supreme Court expressly overruled Harris, finding it to be inconsistent with Apprendi. Id. at ____, 133 S. Ct. at 2163.  The Court then held that the district court's finding by a preponderance of the evidence that the defendant brandished a firearm violated his Sixth Amendment rights, and the Court remanded for resentencing consistent with the jury's verdict. Id. at ____, 133 S. Ct. at 2163–64.

Turning to the facts at hand, we note that the government concedes that it was error for the district court to fail to submit to the jury the element of brandishing the weapon.  We accept the government's concession.  We note that the Alleyne decision was issued while the instant appeal was pending.

Conceding Alleyne error here, the government nevertheless argues that the error was harmless.  As with errors under Apprendi, errors under Alleyne will require vacatur of a sentence only where the error was not harmless. See Washington v. Recuenco, 548 U.S. 212, 218, 126 S. Ct. 2546, 2551 (2006)

8

(recognizing that "most constitutional errors can be harmless" (internal quotation marks omitted)).  That is so because Alleyne was an extension of Apprendi, and we have consistently held that other extensions of Apprendi are subject to harmless error analysis.  For instance, after the Supreme Court extended Apprendi to sentencing schemes in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), and United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), we continued to review preserved Blakely/Booker errors for harmlessness.  See, e.g., United States v. Dulcio, 441 F.3d 1269, 1277 (11th Cir. 2006); United States v. Paz, 405 F.3d 946, 947–48 (11th Cir. 2005) (holding that Booker errors are reviewable for harmless error).  Furthermore, the same principles that buttress harmless error review with regard to Apprendi violations apply with equal force to Alleyne-type violations.  Just as "*Apprendi* did not recognize or create a structural error that would require per se reversal," Nealy, 232 F.3d at 829, Alleyne did not recognize or create a structural error requiring per se reversal.  And as the Supreme Court itself noted in deciding Alleyne, "there is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum." Alleyne, 570 U.S. at ____, 133 S. Ct. at 2163.  In other words, if we review those errors that raise the statutory maximum (Apprendi errors) for harmless error, there is no reason we should not also review those errors that increase the mandatory minimum (Alleyne errors) for harmlessness.  In sum, we hold that as with

9

Apprendi errors impacting a defendant's sentencing range, Alleyne violations impacting a defendant's sentencing range "do not fall within the limited class of fundamental constitutional errors that defy analysis by harmless error standards." Candelario, 240 F.3d at 1307 (internal quotation marks omitted).

This conclusion is virtually dictated by our recent decision in United States v. McKinley, 732 F.3d 1291 (11th Cir. 2013). McKinley involved facts identical to the facts of the instant case, with the sole exception being that in McKinley, the Alleyne argument was made for the first time on appeal, id. at 1295, whereas in the instant case the Alleyne error was preserved. The McKinley panel applied the plain error analysis, id. at 1295–96, whereas we must review de novo. However, McKinley held that "because *Alleyne* was an extension of *Apprendi*, we adopt the same rule and hold that . . . . as with other alleged constitutional errors, specifically errors of the *Apprendi* variety, the failure to make a timely objection results in this Court's application of plain error review." Id. (citation omitted). For the same reasons that unpreserved Apprendi-type errors are subject to plain error review, preserved Apprendi-type errors are subject to harmless error review, as we hold above. Indeed, in McKinley, we held that the defendant there failed to survive plain error review because there was overwhelming evidence that the defendant did in fact brandish the weapon. Id. at 1297.

We therefore turn our attention to determine whether the Alleyne error in this case was in fact harmless.  Applying harmless error review, it quickly becomes "clear beyond a reasonable doubt that a rational jury would have found [McCray] guilty [of brandishing a firearm] absent the error."  Nealy, 232 F.3d at 829.  At trial, the government presented extensive evidence that the first robber to enter the bank brandished a firearm.  In a videotape that was played for the jury, as the robber disappears behind a wall into the vault area, he appears to hold his right arm up and in front of himself, as if pointing a gun.  Furthermore, Charleston Silva, the former store manager of the bank, testified that while he was working in the vault area, a man holding a gun followed one of his coworkers into the vault.  Silva stated that the man "poked [the gun] in our faces telling us to go against the door . . . and to get on the floor," and Silva specifically confirmed that the man pointed the gun at him and his coworker.  That coworker, Liz Perez Johns, recounted how a man carrying a gun followed her into the bank's vault while pointing his gun at her.  Johns explained that the robber pointed a gun at her and Silva and told them to get on the floor.  Additionally, Alan Brett Fears, a special agent with the Federal Bureau of Investigation, testified that McCray confessed to the bank robbery, admitting that he was the individual who jumped over the teller counter during the robbery while carrying a .22-caliber handgun.  McCray stated that once he was behind the counter, he followed a woman into an open room,

11

where he found her and another employee.  McCray further told Agent Fears that he pointed his gun at both employees while telling them to get on the ground and count to 100.  The government also showed the jurors a surveillance videotape of the bank vault during the robbery.  On the video, Silva stands at a counter before Johns runs into the room from the left side of the screen.  A man runs into the room behind her, holding his right arm up in front of himself.  As Silva and Johns stand in the back of the room, the man points his right arm in their direction and continues to do so as they crouch on the floor.  The man also holds his arm in their direction while placing objects into a trash can.  Silva described the events on the video, explaining that the man pointed a gun at him and Johns the entire time.

Given this overwhelming evidence, we are satisfied beyond a reasonable doubt that any rational jury would have found McCray guilty of brandishing a firearm—that is, of displaying "all or part of [a] firearm, or otherwise mak[ing] the presence of the firearm known to another person, in order to intimidate that person."  18 U.S.C. § 924(c)(4); cf. Nealy, 232 F.3d at 829–30 (affirming a sentence under Apprendi where no reasonable jury could have convicted the defendant of the substantive offense but not found him responsible for the requisite quantity of drugs to trigger the enhanced statutory maximum).  Finally, although McCray contends that he did not commit the bank robbery at all and thus was not the individual who brandished a firearm (or carried any firearm in the first

instance), we reject this argument as precluded by the jury's verdict. The jury found McCray guilty of the substantive offenses, so it necessarily follows that the jury found that he was at the scene of the bank robbery. We affirm the district court's imposition of McCray's seven-year mandatory minimum sentence under § 924(c)(1)(A)(ii).

## II.

McCray next argues that the district court erred by finding that he was an organizer or leader of the offense and imposing a two-level enhancement under U.S.S.G. § 3B1.1(c) for his role in the offense. He maintains that the evidence demonstrated that all three codefendants participated equally in the preparation and execution of the robbery, and that "each man did his part to accomplish their joint goal."

We review for clear error a district court's finding that a defendant was an organizer or leader for purposes of applying a § 3B1.1 enhancement. United States v. Barrington, 648 F.3d 1178, 1200 (11th Cir. 2011). A factual finding is clearly erroneous when, after reviewing all the evidence, we are "left with the definite and firm conviction that a mistake has been committed." United States v. Philidor, 717 F.3d 883, 885 (11th Cir. 2013) (internal quotation marks omitted).

Pursuant to § 3B1.1, a defendant's base offense level is increased by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor in any

13

criminal activity." U.S.S.G. § 3B1.1(c). "The assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." United States v. Phillips, 287 F.3d 1053, 1058 (11th Cir. 2002) (internal quotation marks and alteration omitted). According to the Guidelines commentary, in determining whether to apply a leadership role enhancement, the district court should consider: (1) the defendant's "exercise of decision making authority," (2) the nature of the defendant's "participation in the commission of the offense," (3) "the recruitment of accomplices," (4) "the claimed right to a larger share of the fruits of the crime," (5) "the degree of participation in planning or organizing the offense," (6) "the nature and scope of the illegal activity," and (7) "the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 cmt. n.4.

The district court did not clearly err by assessing McCray a two-level enhancement for acting as an organizer or leader of the bank robbery. The government presented evidence that McCray (1) acquired the guns used to commit the robbery, (2) took credit for the initial plan to rob a bank in Cobb County, (3) selected the actual Wells Fargo bank that was eventually robbed as the target for the robbery, and (4) told Agent Fears that "he made most of the decisions about which bank to rob and actually robbing the bank." Although McCray's codefendant Daniels used the term "we" while testifying and referred to the men's actions in the collective, such testimony at most created two permissible views of

14

the evidence, and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." United States v. Izquierdo, 448 F.3d 1269, 1278 (11th Cir. 2006) (internal quotation marks omitted). The district court chose a view of the facts under which McCray was a leader or organizer of the bank heist, and we discern no clear error in that view.

## III.

Finally, McCray argues that his 186-month total sentence is substantively unreasonable. He maintains that the district court failed to adequately account for his history of stable employment and his lack of criminal history. Furthermore, McCray contends that his sentence is unreasonable because it is nearly twice as long as those of his codefendants, Daniels and Biscaino.

We review the sentence imposed by the district court for reasonableness. Booker, 543 U.S. at 264, 125 S. Ct. at 767. Our inquiry includes two distinct elements: We first determine whether a sentence is procedurally reasonable, and then turn our attention to whether the sentence is, on the whole, substantively reasonable. See United States v. Gonzalez, 550 F.3d 1319, 1323 (11th Cir. 2008). McCray does not argue that his sentence is procedurally unreasonable,[1] and our

---

[1]    It is axiomatic that a defendant's failure to raise an issue on appeal abandons that issue, and we therefore deem McCray to have abandoned any claim of procedural unreasonableness. United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

review of the record reveals no procedural defect, so the only issue before us is the substantive reasonableness of his 186-month total sentence.

We review the substantive reasonableness of the sentence imposed by the district court under the "under [the] deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). We measure reasonableness against the factors outlined in 18 U.S.C. § 3553(a). United States v. Pugh, 515 F.3d 1179, 1188 (11th Cir. 2008). The district court is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing enumerated in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. See 18 U.S.C. § 3553(a)(2). In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable Guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. Id. § 3553(a)(1), (3)–(7).

The party challenging a sentence "bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in [§] 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). "In our

16

evaluation of a sentence for reasonableness, we recognize that there is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." United States v. Martinez-Gonzalez, 663 F.3d 1305, 1311 (11th Cir. 2011).  Further, "when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009) (internal quotation marks omitted).  Another indicator of a reasonable sentence is the fact that it is "well below" the applicable statutory maximum.  See Gonzalez, 550 F.3d at 1324.  Thus, under our highly deferential standard of review, we will vacate and remand for resentencing "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted); see also Pugh, 515 F.3d at 1194 (observing that "a sentence may be unreasonable if it is grounded solely on one factor, relies on impermissible factors, or ignores relevant factors").

McCray fails to persuade us that the sentence arrived at by the district court is substantively unreasonable.  During the sentencing hearing, the district court

17

explained that McCray was convicted of a violent crime, which necessitated a "great need for punishment." Furthermore, the district court pointed to the need for deterrence, highlighted the need to protect the public, and explicitly stated that it had considered McCray's lack of a criminal record but had found McCray to be the most culpable participant in the robbery. Although the district court did not expressly reference McCray's employment history, it did take note of the lack of violent crime in McCray's history; regardless, nothing requires the district court to expound upon every nook and cranny of a defendant's background before imposing a sentence. See Talley, 431 F.3d at 786 (explaining that the district court need not discuss each § 3553(a) factor). In addition, McCray's total sentence of 186 months was well below the statutory maximum of life imprisonment and firmly within the applicable Guidelines range of 171–192 months' imprisonment. See Gonzalez, 550 F.3d at 1324; Talley, 431 F.3d at 788. As a sheer matter of common sense, it should come as no surprise to McCray that a person who enters a financial institution in this country wielding a firearm, who demands money from the employees of the bank on pain of death or serious bodily injury—thereby terrorizing a group of innocent civilians for financial gain—and who visits mayhem upon the general public by crashing his vehicle into another car while attempting to make his escape, might later find himself serving a substantial prison sentence. McCray's sentence is substantively reasonable.

18

The district court, moreover, did not create an unwarranted sentencing disparity by sentencing McCray to a longer sentence than those received by his codefendants. McCray was not similarly situated to Daniels and Biscaino, as both men pleaded guilty pursuant to written plea agreements and agreed to cooperate with the government. See United States v. Jayyousi, 657 F.3d 1085, 1118 (11th Cir. 2011) (admonishing the district court on remand "not [to] draw comparisons to cases involving defendants who were convicted of less serious offenses, pleaded guilty, or who lacked extensive criminal histories" (emphasis added)); United States v. Dorman, 488 F.3d 936, 944–45 (11th Cir. 2007) (concluding that coconspirators were not similarly situated for purposes of § 3553(a)(6) because several of them provided substantial assistance while the defendant did not). McCray parted company with his confederates when they pleaded guilty to the charged crime pursuant to plea agreements and cooperated with authorities while he refused to do so and took his chances at trial.[2] Having cast his die at trial, McCray cannot now be heard to complain that he should have received the same sentence as his codefendants, both of whom pleaded guilty and cooperated with the government.

    AFFIRMED.

---

[2]    In fact, one of McCray's codefendants, Biscaino, was convicted only on Count I of the indictment and did not face the mandatory minimum sentence triggered by Count II, the weapons charge, so Biscaino cannot provide a proper comparator to McCray's sentence because they were not even sentenced for the same crimes.

19