J-S22028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
GABRIEL CRUZ :
:
Appellant : No. 2084 EDA 2020

Appeal from the PCRA Order Entered September 24, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011957-2010

BEFORE: BOWES, J., McCAFFERY, J., and SULLIVAN, J.

CONCURRING MEMORANDUM BY BOWES, J.: **FILED FEBRUARY 15, 2023**

I agree with my esteemed colleagues that, pursuant to our decision in

**Commonwealth v. Barnes**, 167 A.3d 110 (Pa.Super. 2017) (*en banc*), the

fact that the jury was not specifically asked to determine whether the

attempted murder of Felix Santos resulted in serious bodily injury renders

Appellant's sentence illegal as violative of the Sixth Amendment. **See**

**Apprendi v. New Jersey**, 530 U.S. 466 (2000).[1] However, to the extent

that **Barnes** held that this **Apprendi** error necessarily results in an illegal

---

[1] I also agree with my colleagues that, under the prevailing law, we need not
remand for the PCRA court to consider the claim of ineffective assistance of
counsel Appellant presents in this appeal because the issue implicates the
legality of Appellant's sentence and is therefore properly adjudicated by this
Court in the first instance. **See**, **e.g.**, **Commonwealth v. Warunek**, 279
A.3d 52, 54 (Pa.Super. 2022) ("An illegal sentence must be vacated. A
challenge to the legality of the sentence can never be waived and may be
raised by this Court *sua sponte.*" (cleaned up)).

sentence, rather than being amenable to review pursuant to the harmless error framework, it is at odds with federal court decisions that were acknowledged favorably in our Supreme Court's post-*Barnes* ruling in *Commonwealth v. King*, 234 A.3d 549 (Pa. 2020). I am persuaded that the harmless error review should apply in this case, and, if it did, would validate Appellant's sentence. Therefore, I write separately to advocate for *Barnes*'s abrogation.

I begin with a brief review of the underlying legal principles. Pursuant to *Apprendi*, any fact that increases the **maximum** penalty for a crime is an element of the crime which must be submitted to the jury to be proved beyond a reasonable doubt. *See Apprendi*, *supra* at 490. The *Apprendi* holding implicated, and sought to vindicate, two constitutional rights: "notice as required by due process and the right to a jury trial." *King*, *supra* at 560.

It quickly was established that both (1) the failure to provide formal notice of the intent to seek an enhanced penalty by including the enhancing fact in the indictment, and (2) the failure to submit the enhancing element of the crime to a jury, were not structural errors, but rather constitutional errors that could be overlooked as harmless. *See*, *e.g.*, *United States v. Cotton*, 535 U.S. 625 (2002) (due process right to notice); *United States v. McCray*,

563 Fed.Appx. 705, 711 (11th Cir. 2014) (right to have elements determined by a jury beyond a reasonable doubt).[2]

The U.S. Supreme Court's extension of *Apprendi* in *Alleyne v. United States*, 570 U.S. 99 (2013), to facts that increased the **minimum** punishment for a crime resulted in a flurry of rulings that mandatory minimum sentences based upon facts not found by a jury beyond a reasonable doubt, but upon the trial court's finding the enhancing facts by a preponderance of the evidence at sentencing, were illegal. *See*, *e.g.*, *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super. 2014) (*en banc*) (vacating as illegal sentence imposed pursuant to 42 Pa.C.S. § 9712.1, which provided a mandatory minimum sentence for drug offenses committed with firearms, expressly indicating that the fact of possession of a firearm was not an element of the crime, required no notice, and was to be determined by the trial court by a preponderance of the evidence at sentencing).

In *Commonwealth v. Wolfe*, 140 A.3d 651 (Pa. 2016), our Supreme Court rejected the possibility that the errors underlying these *Alleyne*-violative sentences could be harmless because each statute that provided authority for the imposition of judicially-determined mandatory minimum sentences was itself "irremediably unconstitutional on its face, non-severable, and void." *Id*. at 663. As such, "a finding of harmless error would sanction

---

[2] *See also Commonwealth v. Wolfe*, 140 A.3d 651, 671 (Pa. 2016) (Todd, J. dissenting) (collecting cases).

a residual longevity in small segments of an unseverable statute requiring unconstitutional actions on the part of judicial officers." *Id*. at 662 n.6.

Mindful of this legal landscape, I turn to the sentencing statute at issue in this appeal. The statutory provision at issue in the case *sub judice*, which was also the one at issue in **Barnes**, provides as follows in relevant part:

> [A] person who has been convicted of attempt, solicitation or conspiracy to commit murder . . . where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years.

18 Pa.C.S. § 1102(c).

Plainly, § 1102(c) suffers from no facial **Apprendi**- or **Alleyne**-based invalidity. Rather, **Apprendi** is implicated where, as is the case here and was in **Barnes**, the enhancing fact—that serious bodily injury resulted from the attempted murder—was not submitted to the jury as an element of the crime to be proven by the Commonwealth beyond a reasonable doubt. Therefore, the basis for the rejection of harmless error review by the **Wolfe** Court does not pertain to § 1102(c). Instead, pursuant to the federal case law cited *supra*, sentences of more than twenty years imposed without notice of intent to seek the enhanced penalty or a jury finding of resultant serious bodily injury may be constitutionally valid if the error was harmless.

In **Barnes**, we did not address the availability of harmless error *per se*. However, we implicitly rejected the notion in disposing of the Commonwealth's

- 4 -

argument that the jury's finding of serious bodily injury in connection with aggravated assault gave rise to the inference that it found that such injury resulted from the attempted murder. We observed that, under Pennsylvania law, juries are permitted to reach inconsistent verdicts.[3] *See Barnes*, *supra* at 120. As such, despite any and all evidence to the contrary, "it was perfectly acceptable for the jury here to find serious bodily injury with respect to aggravated assault but not attempted murder." *Id*. Thus, a fair reading of *Barnes* is that, because the jury might have chosen to reject serious bodily injury as to attempted murder even though it elected to convict the defendant of aggravated assault-serious bodily injury, this Court is not permitted to affirm a sentence that was imposed without the jury making its intent clear.

In *King*, our Supreme Court granted allowance of appeal "to consider the legality of Jimel King's enhanced sentence for attempted murder resulting in serious bodily injury under 18 Pa.C.S. § 1102(c) when the Commonwealth failed to provide formal notice of its intent to seek the enhancement in the charging documents." *King*, *supra* at 552. In that case, King stipulated that the victim suffered shattered bones requiring multiple surgeries followed by intensive physical therapy and proceeded to trial upon the defense that

---

[3] Inconsistent verdicts are also permissible in federal prosecutions. *See*, *e.g.*, *Hamling v. United States*, 418 U.S. 87, 101 (1974) ("It has, of course, long been the rule that consistency in verdicts or judgments of conviction is not required."). Nonetheless, as discussed above, federal courts apply harmless error to *Apprendi* violations.

someone else shot the victim. The jury convicted King of attempted murder, specifically finding that the victim suffered serious bodily injury as a result of the attempt, and the trial court subsequently imposed a sentence of twenty to forty years of imprisonment for that count. On appeal to this Court, King claimed his sentence was illegal because "the charging documents failed to specifically allege attempted murder causing serious bodily injury or reference [§] 1102(c)[.]" *Id*. at 554. This Court rejected King's challenge, concluding that King received sufficient notice, and our Supreme Court granted discretionary review.

The **Barnes** decision and related cases were discussed in both appellate courts in examining the requirements of **Apprendi** in connection with § 1102(c).[4] Our Supreme Court detailed the **Barnes**-based arguments of the parties, as well as the Commonwealth's contention that, if there was an **Apprendi** error, it was harmless because the evidence of serious bodily injury was "overwhelming and uncontested" and the defense strategy was not impaired by the absence of formal notice. **King**, **supra** at 559.

The Court agreed with King that he did not receive sufficient notice to satisfy **Apprendi**. *Id*. at 562. In deciding the case on the grounds of the

---

[4] Those cases include **Commonwealth v. Reid**, 867 A.2d 1280 (Pa.Super. 2005), **Commonwealth v. Johnson**, 910 A.2d 60, 62 (Pa.Super. 2006), and **Commonwealth v. Bickerstaff**, 204 A.3d 988 (Pa.Super. 2019).

notice required to satisfy due process, the Court expressly declined to discuss *Barnes* in detail. *Id*. at 562-63.

The Court went on to consider "whether the absence of [the factual allegation of serious bodily injury] from the indictment or information requires a finding that the resulting sentence for the aggravated crime was illegal." *Id*. at 563. To answer that question, the Court distinguished § 1102(c) from the mandatory minimum statutes struck down in the wake of *Alleyne*, observing that those statutes were facially unconstitutional and not severable, while proper notice would have constitutionally permitted King's § 1102(c) enhanced sentence. *Id*. at 565-66.

The Court also discussed and adopted the reasoning of the *Cotton* Court in applying the harmless error framework to *Apprendi*-based due process challenges, holding that harmless error review may be applied to "the notice error herein." *King*, *supra* at 564. In that vein, the Court explained:

> In *Commonwealth v. Story*, 383 A.2d 155 (Pa. 1978), this Court adopted a harmless error standard equally applicable to errors involving state law as those involving federal constitutional error. This standard provides that an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless. We also found that the burden of establishing harmlessness beyond a reasonable doubt is borne by the Commonwealth. While cases involving harmless error typically involve the prejudicial impact of evidence erroneously admitted at trial, the doctrine is also implicated with other types of error. Furthermore, we have stated that the harmless error standard applies in the related context of variances between the criminal information and the proof presented at trial. Indeed, many courts have found that *Apprendi* errors may be harmless if the evidence is overwhelming and uncontroverted. *See e.g.*, *Washington v. Recuenoco*, 548 U.S. 212, 218-22 (2006)

(finding failure to submit sentencing factor to the jury, like the failure to submit an element to the jury, is not structural error, and is thus subject to harmless error analysis); *Cotton*, 535 U.S. at 632-34 (holding *Apprendi* error harmless where evidence overwhelming and uncontroverted); *Wolfe*, 140 A.3d at 662 (acknowledging other courts have deemed *Apprendi*-based errors harmless, but declining to engage in harmless error analysis where "statute was itself found to be invalid and non-severable").

*King*, *supra* at 564 (cleaned up).

Ultimately, the King Court concluded that the notice error was harmless. It observed that the evidence of serious bodily injury was "overwhelming and uncontroverted," that King had *de facto* notice that the Commonwealth was seeking the enhanced sentence, and that King's defense was not impacted by the lack of formal notice. Accordingly, the Court held "the harmless nature of the error precludes a finding that the sentence was illegally imposed." *Id*. at 566.

Since *King* specifically declined to address the validity of *Barnes*, and limited its adoption of harmless error review to the notice aspect of *Apprendi*, I must agree with the Commonwealth that it is still the law of Pennsylvania that harmless error analysis does not apply to the jury trial aspect of *Apprendi*. *See* Commonwealth's brief at 8-9 n.4. However, in my view, the facts of this case demonstrate why the harmless error framework should apply.

As we observed on Appellant's direct appeal, the evidence adduced at his trial established that Felix Santos was placed on life support at Temple

University Hospital as a result of extensive bleeding and loss of oxygen to the brain after he was stabbed in the chest and torso multiple times while Appellant held him down. *See Commonwealth v. Cruz*, 122 A.3d 446 (Pa.Super. 2015) (unpublished memorandum at 1). Appellant did not contest the nature of the injuries, but proceeded on a defense that he was not the one who harmed Mr. Santos.[5] The trial court instructed the jury that, in order to find Appellant guilty of attempted murder, it must conclude that the Commonwealth proved beyond a reasonable doubt that Appellant or a co-conspirator stabbed Mr. Santos, that the stabbing was done with the specific intent to kill Mr. Santos, and that the stabbing was a substantial step toward committing murder. *See* N.T. Trial, 9/28/12, at 119-20. In turn, for the charge of "aggravated assault, causing serious bodily injury," the trial court instructed the jury that guilt had to be based upon the finding beyond a reasonable doubt that Appellant "caused serious bodily injury to Felix Santos." *Id*. at 122. The court further defined the term "serious bodily injury." *Id*. The jury found Appellant guilty of both crimes, which ultimately merged for sentencing purposes because they were based upon the same criminal act.

---

[5] *See*, *e.g.*, N.T. Trial, at 51 (opening statement Appellant's counsel) ("[Y]our heart goes out to the complainant in this matter. It has to go out to somebody that's on life support in the way he is right now. But you know what, that's not what we're here for. We're not here for that. We're here to see was it this man, my client, Mr. Cruz, or anybody else was it them, are they the ones that did it. That's the question. That's what has to be decided.").

Plainly, the evidence that Mr. Santos suffered serious bodily injury as a result of the attack in which Appellant participated was uncontroverted and overwhelming and the jury concluded beyond a reasonable doubt that Appellant caused it. It is abundantly clear to me that, had the jury been asked whether the attempted murder resulted in serious bodily injury to Mr. Santos, it would have said yes. Appellant thus received the benefit of the constitutional right to a trial by jury safeguarded by *Apprendi*. Nonetheless, *Barnes* mandates that we rule Appellant's sentence illegal and vacate it.

I was in the *Barnes* majority. "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat. Bank & Tr. Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting). Belatedly accepting the wisdom of the federal courts' application of the harmless error framework to cases such as the one *sub judice*, I ask our Supreme Court to overturn both the *Barnes* decision and our ruling in the instant case. Specifically, I implore our Supreme Court to extend *King*'s application of harmless error review for violations of the notice element of *Apprendi* to *Apprendi*'s requirements concerning the right to a jury trial, adopting the reasoning of now-Chief Justice Todd in her *Wolfe* dissent:

> [B]oth state and federal courts which have considered this Sixth Amendment issue have embraced a harmless error analysis, and I find this case easily satisfies harmless error criteria. First, there is a strong presumption that constitutional errors permit a harmless error analysis. . . . Indeed, certain [federal court] decisions have embraced a broad harmless error analysis, finding any error to be harmless where a rational jury would have found the triggering fact in light of overwhelming evidence. Of course,

- 10 -

assessment of the broadest harmless error approach is unnecessary here, where a jury actually found beyond a reasonable doubt the triggering fact.

Regardless, these tribunals' approach supports a determination that the imposition of a sentence in violation of ***Alleyne*** does not require resentencing in all circumstances. Indeed, the majority's rejection of a harmless error analysis will result in an undeserved windfall to certain defendants. This is especially true in the matter *sub judice*, as here . . . [the defendant] has received all that ***Alleyne*** requires. Accordingly, any error in sentencing was harmless.

***Wolfe***, ***supra*** at 670–71 (Todd, J. dissenting) (citations omitted).

Deciding this matter on a clean slate, I would hold that Appellant is not entitled to resentencing based upon the harmless ***Apprendi*** error in this case. However, bound to faithfully apply the precedent that now constrains me, I concur in the Majority's disposition of this appeal.