[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14142
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-00072-WSD-AJB-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OWEN GARTH HINKSON,
a.k.a.:
Michael G. Baxter,
Micheal G. Baxter,
Owen Baxter,
Paul Baxter,
Paul Christopher Baxter,
Charles Downes,
Charles Downs,
Owen Hickson,
Johns Hinkson,
Owen Hinkson,
Owen G. Hinkson,
Owens Hinkson,
Michael Lane,
Michael McLane,
Michael McLane,

Michael Payne,
Charles Williams,
Owen Humberto,
Charles Christopher Baxter,
John Hinkson,
Michrl McLane,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 7, 2018)

Before MARCUS, ROSENBAUM and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Owen Garth Hinkson appeals his sentence for illegal

reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2).  On appeal, Hinkson argues

that the district court erred in determining that his applicable statutory maximum

sentence was twenty years and that his 72-month sentence is substantively

unreasonable.  After review, we affirm.

## I.  BACKGROUND

To date, Hinkson has been deported from the United States six times, and

this is Hinkson's fifth conviction for illegal reentry.  Because the district court

imposed an upward variance from the advisory guidelines range, we recount the

relevant history and facts in detail.

2

### A.    Hinkson's Past Deportations and Illegal Reentry Convictions

Hinkson was born and raised in Jamaica.  In 1983, Hinkson, who was then 22 years old, first entered the United States as a permanent resident and lived in Boston, Massachusetts with some of his family.  Hinkson quickly began racking up criminal convictions, including several for possession of drugs in 1984 and 1985.  In 1987, Hinkson pled guilty in Massachusetts to assault and battery of a police officer and disorderly conduct and received a one-year suspended sentence.  In 1989, Hinkson was convicted in Massachusetts of possession of a firearm and unlawful possession of ammunition and was sentenced to one year in prison.  On June 19, 1989, Hinkson was deported from the United States for the first time.

Several months later, on September 28, 1989, immigration officials learned that Hinkson was again incarcerated in Massachusetts.  Hinkson was charged with, and pled guilty to, illegal reentry of a previously deported alien in the U.S. District Court in Boston.  After serving a fifteen-month federal prison sentence, Hinkson was deported for the second time on June 18, 1991.

On or about January 1, 1992, Hinkson reentered the United States, claiming to be a returning resident.  On February 27, 1995, Hinkson was again deported following his service of a 24-month sentence for violating the conditions of his federal supervised release.

Less than two months later, on April 25, 1995, immigration officials learned that Hinkson was being detained in jail in Dekalb County, Georgia on domestic-related charges.  For the second time, Hinkson was charged with, and pled guilty to illegal reentry of a previously deported alien, this time in the U.S. District Court in Atlanta.  Hinkson received an 18-month prison sentence and was deported for the fourth time on October 31, 1996.

Less than a year later, on May 14, 1997, Hinkson was arrested in Texas during a traffic stop after the vehicle Hinkson was driving was found to contain thirty-two bundles (approximately 103 pounds) of marijuana.  Although Hinkson initially gave an alias to Texas officers, the officers eventually identified Hinkson and determined that he was previously deported and was not lawfully present in the United States.

On June 14, 1999, Hinkson pled guilty for the third time to illegal reentry of a previously deported alien, this time in U.S. District Court in Beaumont, Texas. Not surprisingly, Hinkson received a much stiffer sentence.  The Texas district court imposed a 110-month prison sentence.  After completing his sentence, Hinkson was deported for the fifth time on December 21, 2006.

Nonetheless, Hinkson was undeterred and by 2008 was back in Georgia, where he had obtained a Georgia identification card under his own name and two drivers' licenses under assumed names.  In early 2012, the Department of

4

Homeland Security ("DHS") received information regarding Hinkson, and DHS agents and Dekalb County police officers conducted surveillance and then performed a traffic stop of Hinkson's vehicle. When Hinkson presented a drivers' license using one of his assumed names, he was initially arrested for forgery.

Later, Hinkson was charged for the fourth time with illegal reentry of a previously deported alien. Hinkson pled guilty, and the district court imposed a 48-month prison sentence, followed by three years of supervised release. On August 21, 2015, Hinkson was released from imprisonment on supervised release, and on September 24, 2015, Hinkson was deported for the sixth time.

**B.    Hinkson's 2016 Reentry and 2017 Arrest**

Still undeterred, Hinkson reentered the United States in March 2016, initially living in California, but later moving back to the Atlanta area. During a November 2016 missing person investigation, a Fulton County police detective spoke twice with Hinkson. In January 2017, the detective informed the Bureau of Immigration and Customs Enforcement ("ICE") of Hinkson's presence in Georgia, and a warrant was issued for Hinkson's arrest for violating the conditions of his federal supervised release.

On April 4, 2017, an Arkansas State Police trooper arrested Hinkson on the outstanding federal warrant. The trooper encountered Hinkson while performing a traffic stop of Hinkson's vehicle. During the traffic stop, Hinkson gave the trooper

5

a false Jamaican passport and identification card.  A search of Hinkson's vehicle revealed multiple cell phones and information related to three FedEx packages that had been shipped from California to Georgia the previous day.  Agents with the Drug Enforcement Agency intercepted the three FedEx shipments, which were found to contain a total of approximately 124 pounds of marijuana.  During questioning, Hinkson denied any knowledge of the FedEx labels, stating that another person was driving the car in California.

## C.    Presentencing District Court Proceedings

On February 21, 2017, a grand jury indicted Hinkson on the current charge of one count of illegally reentering the United States after having previously been deported and removed, in violation of 8 U.S.C. § 1326(a) and (b)(2).  Hinkson pled guilty to the offense without the benefit of a plea agreement.

The presentence investigation report ("PSI") recommended: (1) a base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a); (2) a four-level increase because Hinkson already had a prior illegal reentry conviction, pursuant to U.S.S.G. § 2L1.2(b)(1)(A);[1] and (3) a two-level reduction for his acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a).  With a total offense level of 10

---

[1]While Hinkson needed only one prior illegal reentry conviction to receive the four-level increase, he actually had four prior illegal reentry convictions, two of which were recent enough to be considered for purposes of the offense level increase. See U.S.S.G. § 2L1.2(b)(1)(A) & cmt. n.3.

and a criminal history category of IV, Hinkson's advisory guidelines range was 15 to 21 months' imprisonment.

Hinkson did not object to the PSI's guidelines calculations. Instead, Hinkson objected to the PSI's statement that he was subject to the enhanced statutory maximum penalty of twenty years under 8 U.S.C. § 1326(b)(2). Hinkson maintained that he was subject only to the ten-year statutory maximum sentence in § 1326(b)(1).

Under § 1326(b)(2), an illegal-reentry offense carries a twenty-year maximum penalty if the defendant's removal was subsequent to his conviction for a commission of an "aggravated felony," which is defined in 8 U.S.C. § 1101(a)(43). 8 U.S.C. § 1326(a), (b)(2). Under § 1326(b)(1), the illegal-reentry offense carries a ten-year maximum penalty if the defendant's removal was subsequent to his conviction for the commission of three or more misdemeanors involving drugs, crimes against the person, or both, or for a felony that is not an aggravated felony. Id. § 1326(b)(1).

The parties filed sentencing memoranda addressing the statutory maximum issue. The parties agreed that Hinkson's 1999 illegal reentry conviction in the Texas district court could qualify as an aggravated felony if it occurred subsequent to a deportation for another aggravated felony. See 8 U.S.C. § 1101(a)(43)(O). The parties disputed, however, whether Hinkson's 1987 Massachusetts conviction

7

for assault and battery on a police officer could serve as the earlier aggravated felony given that it was vacated in 2005. Hinkson also argued that his Massachusetts assault and battery conviction did not qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), that is as a "crime of violence," as defined in 18 U.S.C. § 16. Hinkson submitted Massachusetts court documents showing that: (1) in 1987, he was charged with assault and battery on a police officer, in violation of Massachusetts General Laws ch. 265, § 13D; and (2) in February 2005, the state court granted Hinkson's motion to reconsider his motion to vacate his conviction on that charge and also dismissed the case.

Prior to sentencing, the district court entered an order concluding that Hinkson's 1987 Massachusetts assault and battery conviction and his 1999 federal conviction for illegal reentry both qualified as aggravated felonies and thus the applicable maximum prison term for Hinkson's offense was twenty years. The district court further explained that Hinkson's Massachusetts conviction qualified as an aggravated felony even though it was vacated in 2005 because the conviction remained valid at the time of his deportations in 1989, 1991, 1995 and 1996, and at the time of his illegal reentry conviction in 1999.

## D.    Revocation and Sentencing

At Hinkson's September 2017 combined revocation and sentencing hearing, the district court first found Hinkson guilty of violating the terms of his supervised

release from his 2015 illegal reentry conviction.  The district court revoked Hinkson's supervised release and imposed a 24-month prison term for those violations.[2]

As to Hinkson's new illegal reentry offense, the district court found that Hinkson's advisory guidelines range was 15 to 21 months' imprisonment. Hinkson stated that he had no objection to the guidelines findings, but wished to preserve his objection to his statutory maximum penalty being twenty years.

The government asked for a significant upward variance to 108 months' imprisonment based on the fact that: (1) Hinkson had returned to the United States within six months of his sixth deportation; (2) Hinkson had a long history of returning to the United States within months of his removal and then being discovered upon his arrest on new criminal charges; and (3) Hinkson's last 48-month sentence had failed to deter him.

Hinkson argued that a sentence within the advisory guidelines range was appropriate because: (1) he had accepted responsibility; (2) he had returned to the United States because he had lived in the United States since he was 19 years old and his family lives here; (3) he had not been convicted of any crimes except illegal reentry since 1988; (4) his prior illegal reentries were already factored into his guidelines calculations and advisory guidelines range; and (5) his 24-month

---

[2]Hinkson has not appealed his supervised release revocation or the 24-month sentence imposed for his violations.

sentence for his supervised release violations would run consecutive to any sentence the district court imposed for his new illegal reentry offense.

The district court stated that it had weighed the 18 U.S.C. § 3553(a) factors and imposed a 72-month sentence, to run consecutively to the 24-month sentence imposed for Hinkson's supervised release violations. The district court determined that "this is a compelling case where an above-guideline sentence is warranted." The district court noted that it had never had a case like Hinkson's, in which a person was already convicted four times for illegal reentry and then returned to the United States. The district court stated that there was an "undeniable pattern" to Hinkson's conduct indicating that the United States had failed to get Hinkson's attention. The district court expressed "no doubt" that Hinkson "will be back in the United States after [he] serve[s] this sentence" and is removed for the seventh time. The district court stressed the need to specifically deter Hinkson and also to deter others who might consider unlawfully reentering the United States on multiple occasions and to promote respect for the law by imposing progressively greater punishments for each illegal reentry. Hinkson objected to the 72-month sentence as substantively unreasonable.

On the same day, the district court entered an order stating that it had imposed the 72-month sentence after considering the § 3553(a) sentencing factors, citing in particular "Hinkson's undeniable pattern and history of reentering the

10

United States illegally." In that order, the district court further stated that, although it had ruled prior to sentencing "that the maximum incarceration period [was] twenty years," it "would have imposed the same sentence even if the maximum authorized period of incarceration was ten rather than twenty years," as Hinkson argued.

## II.  DISCUSSION

### A.    Applicable Statutory Maximum Sentence

On appeal, Hinkson argues that his statutory maximum term of imprisonment was ten years under 8 U.S.C. § 1326(b)(1) because his 1987 Massachusetts assault and battery conviction did not qualify as an aggravated felony under § 1326(b)(2).  We need not resolve this issue, however, because, as the government points out, the district court explicitly stated that it would have imposed the same 72-month sentence even if Hinkson's applicable statutory maximum sentence was ten years rather than twenty.

Under Federal Rule of Criminal Procedure 52(a), an error is harmless and must be disregarded if it does not affect substantial rights.  Fed. R. Crim. P. 52(a). At sentencing, a non-constitutional error is harmless "if, viewing the proceedings in their entirety, [the] court determines that the error did not affect the [sentence], or had but very slight effect."  United States v. Mathenia, 409 F.3d 1289, 1292 (11th Cir. 2005) (second alteration in original, internal quotation marks omitted).

11

In the context of an alleged guidelines calculation error, this Court has explained that when the district court states that, based on its consideration of the § 3553(a) factors, it would have imposed the same sentence regardless, that error is harmless so long as the sentence is reasonable under the correctly calculated guidelines. See United States v. Keene, 470 F.3d 1347, 1349-50 (11th Cir. 2006) (concluding that "it would make no sense to set aside this reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm").

Here, the district court told us that even if Hinkson was correct that his statutory maximum was ten years, it would have imposed the same 72-month sentence. Moreover, Hinkson's 72-month sentence does not exceed ten years (120 months) and run afoul of § 1326(b)(1). Thus, the record demonstrates that any error as to the applicable statutory maximum did not affect Hinkson's sentence. Under these circumstances, any error was harmless and does not require a remand for resentencing.[3]

---

[3]Hinkson moved this Court for permission to supplement the record on appeal with an affidavit from the attorney who represented him in Massachusetts when his 1987 assault and battery conviction was vacated in 2005. Because we do not address whether Hinkson's now-vacated assault and battery conviction qualifies as an aggravated felony for purposes of § 1326(b)(2), we **DENY** Hinkson's motion to supplement the record.

## B.    Substantive Reasonableness

This Court reviews the reasonableness of a sentence for an abuse of discretion using a two-step process.  See Gall v. United States, 552 U.S. 38, 46, 51, 128 S. Ct. 586, 594, 597 (2007).  First, we ensure that the district court made no significant procedural error, and then we examine whether the sentence was substantively reasonable in light of the totality of the circumstances and the § 3553(a) sentencing factors.  Id. at 51, 128 S. Ct. at 597.[4]

When the district court imposes a sentence outside the advisory guidelines range, the district court "must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (quoting Gall, 552 U.S. at 50, 128 S. Ct. at 597).  We give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance, and do not require extraordinary circumstances to justify such a sentence or presume that such a sentence is unreasonable.  Gall, 552 U.S. at 47, 51, 128 S. Ct.

---

[4]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

at 594-95, 597; see also United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir. 2009).

The party challenging the sentence bears the burden to show that the sentence was unreasonable. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010). Abuse of discretion can be shown when the district court: "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper facts." United States v. Osorio-Moreno, 814 F.3d 1282, 1287 (11th Cir. 2016). This review is deferential, and this Court will vacate the sentence only if "left with the definite and firm conviction that the district court committed a clear error of judgment . . . by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. (quoting United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc)).

Here, Hinkson has not shown that his 72-month sentence is substantively unreasonable in light of the record and the § 3553(a) factors.[5] Hinkson did not dispute that he had been deported six times already, that this was his fifth conviction for illegal reentry, and that he had illegally reentered the United States

---

[5]Apart from claiming that the district court applied the wrong statutory maximum penalty, Hinkson does not argue that the district court committed any procedural error at sentencing.

after each of his past deportations, despite having served past prison sentences for as much as 48 and 110 months.

This time, Hinkson's advisory guidelines range was 15 to 21 months' imprisonment, far below prior sentences that had not deterred Hinkson. In imposing a 51-month upward variance, the district court found compelling Hinkson's undeniable pattern of quickly reentering without authorization following each deportation, which demonstrated Hinkson's complete unwillingness to comply with court orders and conform his conduct to the law. Under the circumstances, the district court was entitled to attach great weight to the factors of promoting respect for the law and affording adequate deterrence. See United States v. Dougherty, 754 F.3d 1353, 1361 (11th Cir. 2014).

Although Hinkson contends that his advisory guidelines range already accounted for his history of deportations and illegal reentries, that assertion is only partially true. Hinkson had four prior illegal reentry convictions, but only one illegal reentry conviction was needed to support the four-level increase in his offense level under U.S.S.G. § 2L1.2(b)(1)(A), and only two illegal reentry convictions were recent enough to be counted toward his criminal history score under U.S.S.G. § 4A1.2(e). In other words, Hinkson's first two illegal reentry convictions in 1989 and 1991 had no effect on the calculation of his advisory guidelines range.

15

In any event, a district court may consider conduct that was used to calculate the advisory guidelines range in deciding whether to impose a variance based on the § 3553(a) factors.  United States v. Rodriguez, 628 F.3d 1258, 1264 (11th Cir. 2010).  Further, the advisory guidelines range was only one of many sentencing factors the district court was required to consider.  See United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).  Finally, although the district court's upward variance was substantial, the ultimate sentence of 72-months remained four years below the ten-year statutory maximum in 8 U.S.C. § 1326(b)(1) that Hinkson contends should apply to his offense.  See United States v. McKinley, 732 F.3d 1291, 1299 (11th Cir. 2013) (stating that the fact that a prison sentence is well below the statutory maximum term is an indicator of a reasonable sentence).  His 72-month sentence also is below the 110-month sentence Hinkson previously served for his 1999 illegal reentry conviction.

In light of the record, the district court's justification for the 51-month upward variance was sufficiently compelling, and the district court did not abuse its discretion by varying upward.  For all these reasons, we affirm Hinkson's 72-month sentence.

**AFFIRMED.**

16